**ORAL ARGUMENT NOT YET SCHEDULED**

**No. 23-3190**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

UNITED STATES OF AMERICA,

*Appellee*,

v.

DONALD J. TRUMP,

*Defendant-Appellant*.

_____

On Appeal from the United States District Court
for the District of Columbia

---

**DEFENDANT-APPELLANT PRESIDENT DONALD J. TRUMP'S
EMERGENCY MOTION FOR STAY PENDING APPEAL AND REQUEST
FOR TEMPORARY ADMINISTRATIVE STAY**

---

**RELIEF REQUESTED BY: November 10, 2023**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES………………………………………………………iv

GLOSSARY………………………………………………………………...viii

INTRODUCTION……………………………………………………………1

STATEMENT OF THE CASE………………………………………………..2

ARGUMENT…………………………………………………………………7

I.     President Trump Is Likely To Prevail on Appeal……………………………8

A.     The Gag Order Is Subject to the Most Exacting Scrutiny…………………...8

     1.     A gag order requires a "clear and present danger to the administration of justice."……………………………………………8

     2.     Prior restraints are subject to the most exacting scrutiny……………..9

     3.     Political campaigns require the First Amendment's "fullest and most urgent application."……………………………………………10

     4.     The Gag Order violates the rights of tens of millions of Americans to receive President Trump's speech………………………………...11

     5.     The Gag Order imposes a classic heckler's veto……………………13

     6.     The Gag Order shields public figures from public criticism………..15

     7.     The Gag Order reflects forbidden viewpoint discrimination………..16

B.     The Gag Order Cannot Withstand Any Level of Scrutiny…………………17

     1.     The prosecution did not establish any compelling interest…………17

     2.     The Gag Order is not narrowly tailored……………………………..18

C.     The Gag Order Is Incurably Vague…………………………………………19

III.    The Remaining Equitable Factors Favor a Stay…………………………...21

CONCLUSION……………………………………………………………………...23

CERTIFICATE OF SERVICE…………………………………………………24

CERTIFICATE OF COMPLIANCE……………………………………………...25

CERTIFICATE OF PARTIES AND *AMICI CURIAE*……………………………26

DISCLOSURE STATEMENT……………………………………………………….27

# TABLE OF AUTHORITIES

## CASES

*ACLU, Inc. v. Zeh*,
   864 S.E.2d 422 (Ga. 2021).............................................................................15

*Brandenburg v. Ohio*,
   395 U.S. 444 (1969).......................................................................................13

*Brown v. Louisiana*,
   383 U.S. 131 (1966).......................................................................................14

*Buckley v. Valeo*,
   424 U.S. 1 (1976)...........................................................................................20

*Burton v. City of Belle Glade*,
   178 F.3d 1175 (11th Cir. 1999) .....................................................................21

*Cohen v. Beneficial Indus. Loan Corp.*,
   337 U.S. 541 (1949).........................................................................................7

*Collin v. Chicago Park Dist.*,
   460 F.2d 746 (7th Cir. 1972) .........................................................................14

*Counterman v. Colorado*,
   600 U.S. 66 (2023).........................................................................................13

*Cox v. Louisiana*,
   379 U.S. 536 (1965).......................................................................................14

*Crane v. Ariz. Republic*,
   972 F.2d 1511 (9th Cir. 1992) .......................................................................15

*Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*,
   274 F.3d 377 (6th Cir. 2001) .........................................................................22

*Diesen v. Hessburg*,
    455 N.W.2d 446 (Minn. 1990).......................................................................15

*Edwards v. South Carolina*,
  372 U.S. 229 (1963) ........................................................................14

*Elrod v. Burns*,
  427 U.S. 347 (1976) ...................................................................7, 22

*Forsyth County v. Nationalist Movement*,
  505 U.S. 123 (1992) ........................................................................14

*Gentile v. State Bar of Nevada*,
  501 U.S. 1030 (1991) ........................................................................9

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974) ........................................................................15

*Grayned v. City of Rockford*,
  408 U.S. 104 (1972) ........................................................................21

*Hynes v. Mayor & Council of Borough of Oradell*,
  425 U.S. 610 (1976) ........................................................................20

*In re Murphy-Brown, LLC*,
  907 F.3d 788 (4th Cir. 2018) ...........................................................7

*In re Rafferty*,
  864 F.2d 151 (D.C. Cir. 1988) .........................................................7

*Landmark Commc'ns, Inc. v. Virginia*,
  435 U.S. 829 (1978) ...................................................... 8, 9, 17, 19

*Matal v. Tam*,
  582 U.S. 218 (2017) ....................................................... 14, 16, 17

*McIntyre v. Ohio Elec. Comm'n*,
  514 U.S. 334 (1995) ........................................................................10

*Meyer v. Grant*,
  486 U.S. 414 (1988) ........................................................................10

*Monitor Patriot Co. v. Roy*,
  401 U.S. 265 (1971) ........................................................................10

*NAACP v. Button*,
    371 U.S. 415 (1963) ........................................................................20

*Nebraska Press Ass'n v. Stuart*,
    427 U.S. 539 (1976) ........................................... 9, 10, 17, 18, 19, 20

*Nken v. Holder*,
    556 U.S. 418 (2009) ....................................................................7, 22

*Packingham v. North Carolina*,
    582 U.S. 98 (2017) ..........................................................................11

*Phelps–Roper v. Nixon*,
    545 F.3d 685 (8th Cir. 2008) ..........................................................22

*R.A.V. v. City of St. Paul*,
    505 U.S. 377 (1992) ................................................................. 16, 17

*Red Lion Broad. Co. v. F.C.C.*,
    395 U.S. 367 (1969) ........................................................................12

*Rosenblatt v. Baer*,
    383 U.S. 75 (1966) ..........................................................................15

*Sheppard v. Maxwell*,
    384 U.S. 333 (1966) ......................................................................8, 19

*Smith v. Daily Mail Pub. Co.*,
    443 U.S. 97 (1979) ..........................................................................10

*Snyder v. Phelps*,
    562 U.S. 443 (2011) ........................................................................10

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ................................................................. 10, 12

*Texans for Free Enter. v. Tex. Ethics Comm'n*,
    732 F.3d 535 (5th Cir. 2013) ..........................................................22

*United States v. Brown*,
    218 F.3d 415 (5th Cir. 2000) ........................................... 7, 9, 12, 13

vi

*United States v. Ford*,
 830 F.2d 596 (6th Cir. 1987) ...........................................................7, 8, 9, 11, 12

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
 425 U.S. 748 (1976) ........................................................................................11

*Watson v. City of Memphis*, 373 U.S. 526 (1963) ....................................................14

vii

# **<u>GLOSSARY</u>**

Gag Order………………Opinion and Order in *United States v. Trump*, No. 1:23-
cr-257-TSC, D. Ct. Doc. 105 (Oct. 17, 2023)

the prosecution…………the United States of America

# INTRODUCTION

No court in American history has imposed a gag order on a criminal defendant who is actively campaigning for public office—let alone the leading candidate for President of the United States.  That centuries-long practice was broken on October 17, 2023, when the district court entered its Opinion and Order, A1 (the "Gag Order"), muzzling President Trump's core political speech during an historic Presidential campaign.

Given the Gag Order's extraordinary nature, one would expect an extraordinary justification for it.  Yet none exists.  President Trump has made months of public statements about this case, but the Department of Justice ("the prosecution") submitted no evidence of any actual or imminent threat to the administration of justice.  Instead, when asked about the supposed threat to the case, the prosecution admitted, "of course this prejudice is speculative."

Based this speculation, the district court entered a sweeping, viewpoint-based prior restraint on the core political speech of a major Presidential candidate, based solely on an unconstitutional "heckler's veto."  The Gag Order violates the First Amendment rights of President Trump and over 100 million Americans who listen to him.

President Trump's uniquely powerful voice has been a fixture of American political discourse for eight years, and central to the American fabric for decades.

The prosecution's claim that his core political speech suddenly poses a threat to the administration of justice is baseless.  The prosecutors and potential witnesses addressed by President Trump's speech are high-level government officials and public figures, many of whom routinely attack President Trump in their own public statements, media interviews, and books.

President Trump's viewpoint and modes of expression resonate powerfully with tens of millions of Americans.  The prosecution's request for a Gag Order bristles with hostility to President Trump's viewpoint and his relentless criticism of the government—including of the prosecution itself.  The Gag Order embodies this unconstitutional hostility to President Trump's viewpoint.  It should be immediately stayed.

President Trump requests a ruling on this motion by November 10, 2023, and requests an administrative stay pending the Court's ruling.  President Trump has notified the prosecution, who note that they oppose this motion.  President Trump respectfully asks that this appeal be expedited to the greatest extent possible.

## STATEMENT OF THE CASE

President Donald J. Trump is the leading Republican candidate for President of the United States.  He has a dominant lead in the Republican primary polls, and he substantially leads Joe Biden in head-to-head matchup polls.  President Trump has over 100 million followers across social-media platforms.

2

On August 1, 2023, President Trump was indicted on four counts related to his attempts to dispute the outcome of the 2020 Presidential election, which he and tens of millions of Americans regard as rigged and stolen. A90. As this case proceeds, President Trump continues to campaign for President and frequently engages in core political speech, including about this case. His central campaign messages include statements that this case is a politically motivated persecution designed to derail his candidacy, and that the prosecutors against him are abusing their power. A142-143. He also criticizes major public figures who are connected to the case, especially those who publicly attack him. A191. Among others, President Trump has recently sharply criticized the Biden Administration for neglecting national security and allowing threats to the United States to escalate while it attempts to silence its leading political opponent, him, and for allowing the District of Columbia to become a "crime-ridden embarrassment to our nation," A142.

On September 15, 2023, the prosecution moved for a gag order on President Trump's public statements. A135. The prosecution contended that, "[i]n the period between … November 3, 2020, and … January 6, 2021"—*i.e.*, almost three years ago—President Trump made public statements about certain individuals, "and the individuals whom he targeted were subject to threats and harassment." A136. All the prosecution's examples of such "threats" or "harassment" were from late 2020.

3

A137-39.  The most recent public statement by President Trump that was supposedly followed by threats or harassment was from December 2020.  A139.

The prosecution then provided ten screen shots of social-media posts by President Trump since his indictment, dated August 4–8, 21, 23, and 28, 2023.  A140-46.  These included five posts criticizing the Biden Department of Justice and the prosecutors.  A142-44.  They included two posts referring to potential witnesses—Rudy Giuliani and former Vice President Mike Pence—which made no clear reference to this case.  A146.  The prosecution produced no evidence that any prosecutor or witness had been harassed or threatened after any of these posts, nor any evidence that any individual had felt intimidated.  A146.  The prosecution presented no evidence of any statements about court staff.  A146.

On September 29, 2023, the prosecution filed a reply, which quoted from six more social-media posts from President Trump, dated September 5, 6, 22, 23, and 26, 2023, and a media interview of President Trump on September 17, 2023.  A190-91.  These included posts criticizing former Vice President Pence, former Attorney General Bill Barr, former Chairman of the Joint Chiefs of Staff Mark Milley, and Georgia Secretary of State Brad Raffensberger.  A190-91.  All those mentioned by President Trump were high-level government officials and public figures.  The prosecution submitted no evidence that any prosecutor or witness had been threatened after, or felt intimidated by, President Trump's comments.  A190-91.

The district court held a hearing on the motion on October 16, 2023.  The prosecution presented no evidence at the hearing.  The court repeatedly expressed concern that President Trump's comments might inspire independent third parties to engage in threats or harassment toward witnesses, prosecutors, or court staff.  A44, A48, A53, A56, A63, A70.  The defense emphasized that the prosecution had submitted no evidence of such harassment.  A23, A29, A60.  The court responded, "Why should they have to?"  A60.  When the district court asked the prosecution about its lack of evidence, the prosecution responded, "of course this prejudice is speculative."  A65.

The defense proposed that "the easiest solution … is to adjourn the case [until] after the presidential election."  A23.  The district court responded: "This trial will not yield to the election cycle and we're not revisiting the trial date."  A23-24.  The other two times that defense counsel raised this alternative, the court again dismissed it.  A69, A82.  The prosecution presented no evidence about the availability or efficacy of any less restrictive alternatives.

On October 17, 2023, the district court entered its Opinion and Order.  A1.  The Gag Order found that unidentified third parties might react to President Trump's speech with threats or harassment: "[W]hen Defendant has publicly attacked individuals … those individuals are consequently threatened and harassed."  A2.

5

The Gag Order cited no evidence and made no findings of any such threats or harassment since the case was filed.  A2.

The Gag Order recited that "alternative measures such as careful *voir dire*, jury sequestration, and cautionary jury instructions are sufficient to remedy only some of the potential prejudices that the government's motion seeks to address."  A1-2.  The Gag Order cited no evidence and made no other findings on this point.  The Gag Order did not mention a trial continuance as an "alternative measure[]."  A1-2.

Based on this analysis, the district court ordered that:

> All interested parties in this matter, including the parties and their counsel, are prohibited from making any public statements, or directing others to make any public statements, that target (1) the Special Counsel prosecuting this case or his staff; (2) defense counsel or their staff; (3) any of this court's staff or other supporting personnel; or (4) any reasonably foreseeable witness or the substance of their testimony.

A3.  The court included exemptions allowing President Trump to "criticiz[e] the government generally," to state "that Defendant is innocent of the charges against him, or that his prosecution is politically motivated," and to "criticiz[e] the campaign platforms or policies of" candidates such as "Vice President Pence."  A3.

President Trump filed a notice of appeal and moved for stay pending appeal. A204.  On October 29, 2023, the district court denied the motion for stay pending appeal.  A294.

## ARGUMENT

Four factors govern a motion for stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009).

First, the Gag Order is an immediately appealable collateral order. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury*." Elrod v. Burns*, 427 U.S. 347, 373 (1976). The Gag Order, therefore, "fall[s] in that small class which finally determine claims of right separate from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *In re Rafferty*, 864 F.2d 151, 153 (D.C. Cir. 1988) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)); *see also United States v. Brown*, 218 F.3d 415, 420 (5th Cir. 2000) (holding that a gag order against a criminal defendant was immediately appealable); *United States v. Ford*, 830 F.2d 596, 598 (6th Cir. 1987) (same).[1]

---

[1] If the Court determines that the Gag Order is not immediately appealable, President Trump respectfully requests that the Court treat this motion as a petition for writ of mandamus and grant it. *See In re Murphy-Brown, LLC*, 907 F.3d 788, 796 (4th Cir. 2018).

## I.  President Trump Is Likely To Prevail on Appeal.

### A.  The Gag Order Is Subject to the Most Exacting Scrutiny.

As a viewpoint-based prior restraint on the core political speech of a Presidential candidate to an audience of over 100 million Americans, the Gag Order is virtually *per se* invalid.  At the very least, it is subject to the most exacting scrutiny.

#### 1.  A gag order requires a "clear and present danger to the administration of justice."

In *Landmark Communications, Inc. v. Virginia*, the Supreme Court held that restrictions on speech about pending judicial proceedings require a showing of "clear and present danger to the administration of justice."  435 U.S. 829, 844 (1978).  "The operations of the courts and the judicial conduct of judges are matters of utmost public concern."  *Id.* at 839.  Public scrutiny of court proceedings "guards against the miscarriage of justice by subjecting the police, prosecutors, and judicial processes to extensive public scrutiny and criticism."  *Id.* (quoting *Sheppard v. Maxwell*, 384 U.S. 333, 350 (1966)).

*Landmark Communications* concerned restrictions on the media.  *See id.*  In *Ford*, the Sixth Circuit applied the same standard to a gag order on a criminal defendant who was also a political candidate.  830 F.2d at 598.  Adopting "the exacting 'clear and present danger' test for free speech," the Sixth Circuit held that the First Amendment does not draw distinctions between ordinary individuals and corporate media: "We see no legitimate reasons for a lower threshold standard for

8

individuals, including defendants, seeking to express themselves outside of court than for the press." *Id.*

To be sure, in *Gentile v. State Bar of Nevada*, the Supreme Court held that a State could impose a differently phrased—though still exacting—standard for statements by *attorneys*, *i.e.*, "a substantial likelihood of material prejudice." 501 U.S. 1030, 1063 (1991). But *Gentile* emphasized that attorneys are not ordinary citizens, but officers of the court subject to unique restrictions—in contrast to "the common rights of citizens." *See id.* at 1066-75, 1074; *but see Brown*, 218 F.3d at 428 (adopting the *Gentile* standard for criminal defendants). Here, to the extent that the two standards differ—*but see Gentile*, 501 U.S. at 1037 (plurality opinion)—the "clear and present danger" test applies.

In addition, the Gag Order contravenes a series of First Amendment principles, all of which independently call for the most exacting scrutiny.

### 2.    Prior restraints are subject to the most exacting scrutiny.

First, unlike the restrictions at issue in *Landmark Communications* and *Gentile*, the Gag Order is a prior restraint on speech. In *Nebraska Press Association v. Stuart*, the Supreme Court emphasized "that prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." 427 U.S. 539, 559 (1976). "[A] prior restraint" is "one of the most extraordinary remedies known to our jurisprudence." *Id.* at 562. "[T]he

9

protection against prior restraint should have particular force as applied to reporting of criminal proceedings….” *Id.*

"Prior restraints have been accorded the most exacting scrutiny," *Smith v. Daily Mail Pub. Co.*, 443 U.S. 97, 102 (1979), which applies to the Gag Order here.

### 3.    Political campaigns require the First Amendment's "fullest and most urgent application."

"Speech on matters of public concern is at the heart of the First Amendment's protection.  That is because speech concerning public affairs is more than self-expression; it is the essence of self-government." *Snyder v. Phelps*, 562 U.S. 443, 451–52 (2011) (cleaned up); *McIntyre v. Ohio Elec. Comm'n*, 514 U.S. 334, 347 (1995).  Likewise, the First Amendment's "constitutional guarantee has its fullest and most urgent application precisely to the conduct of campaigns for political office." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 162 (2014) (quoting *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971)).  Campaign speech lies "at the core of our electoral process and of the First Amendment freedoms—an area … where protection of robust discussion is at its zenith." *Meyer v. Grant*, 486 U.S. 414, 425 (1988) (citations and quotations omitted).

Thus, both *Ford* and *Brown* granted virtually complete exemptions for the defendant's campaign speech.  In *Ford*, the Sixth Circuit stated:

> Here the defendant … is entitled to attack the alleged political motives of the Republican administration which he claims is persecuting him because of his political views and his race…. He is entitled to fight the obvious damage to

10

his political reputation in the press and in the court of public opinion, as well as in the courtroom and on the floor of Congress. He will soon be up for reelection. His opponents will attack him as an indicted felon. He will be unable to respond in kind if the District Court's order remains in place.

*Ford*, 830 F.2d at 600–01.  In *Brown*, the Fifth Circuit noted that "[t]he district court also made special allowances for Brown's re-election campaign by lifting most of the order … for the duration of the campaign…. Brown was able to answer, without hindrance, the charges of his opponents regarding his indictment throughout the race." *Brown*, 218 F.3d at 430.

Here, the Gag Order restricts core political and campaign speech.  The issues underlying the indictment are "central to [Biden's] re-election argument."  Kevin Liptak, et al., *Trump's Third Indictment Is the Most Personal – and Trickiest – One for Biden*, CNN.com (Aug. 2, 2023), at https://www.cnn.com/2023/08/02/politics/joe-biden-donald-trump-indictment/index.html.  The First Amendment permits President Trump to rebut them and to criticize the current and former government officials attacking him.

### 4.    The Gag Order violates the rights of tens of millions of Americans to receive President Trump's speech.

The First Amendment's "protection afforded is to the communication, to its source and to its recipients both."  *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 756 (1976) (citing many cases); *Packingham v. North Carolina*, 582 U.S. 98, 104 (2017) (recognizing the right to "speak and

11

listen, and then … speak and listen once more," as a "fundamental principle of the First Amendment"); *Red Lion Broad. Co. v. F.C.C.*, 395 U.S. 367, 390 (1969). A restriction on President Trump's speech inflicts a reciprocal injury on the rights of over 100 million Americans who listen to him, irrespective of their political beliefs.

This right of listeners to receive President Trump's message has its "fullest and most urgent application precisely to the conduct of campaigns for political office," especially for the Presidency. *Susan B. Anthony List*, 573 U.S. at 162. *Ford* emphasized that, if Congressman Ford were silenced, "reciprocally, his constituents will have no access to the views of their congressman on this issue of undoubted public importance." 830 F.2d at 601. Likewise, *Brown* stated that "[t]he urgency of a campaign … may well require that a candidate, for the benefit of the electorate as well as himself, have absolute freedom to discuss his qualifications…." 218 F.3d at 430.

Indeed, the Gag Order has been widely criticized for restricting the rights of voters to hear President Trump's uncensored message. *See, e.g.,* Besty McCaughey, *Why the ACLU Is Going To Bat For Donald Trump*, N.Y. POST (Nov. 1, 2023) (the Gag Order violates "the public's right to hear Trump's views so it can decide 'whether he deserves to be elected again'"); The Editors, *The Trump Gag Order Goes Too Far*, NATIONAL REVIEW (Oct. 18, 2023) ("Not only is free speech his right — it is the right of voters in the forthcoming primary and general elections to hear

12

it before choosing the nation's next president."); Andrew McCarthy, *The Trump Gag Order Is Judicial Overkill*, NATIONAL REVIEW (Oct. 17, 2021) (emphasizing "the court's duty to minimize the intrusion of judicial process on the electoral process…."); Isaac Arnsdorf et al., *In Trump Cases, Experts Say Defendant's Rhetoric Will Be Hard To Police*, WASHINGTON POST (Aug. 23, 2023) (the judge should "permit voters access to the defendant's statements as they decide how to cast their ballots…"); Jason Willick, *Go Ahead, Silence Donald Trump*, WASHINGTON POST (Sept. 19, 2023).

Though the issue was raised repeatedly, A159-60, A165, A178; A47, A62-63, the district court gave the First Amendment rights of President Trump's audiences no meaningful consideration.  The Gag Order does not mention them, *see* A1-3, and the district court declined to consider them when President Trump raised them, *e.g.*, A47, A62-63.  That is reversible error.

### 5.    The Gag Order imposes a classic heckler's veto.

The Gag Order's justification is to protect trial participants from supposed, hypothetical "threats" and "harassment" by independent third parties.  A2-3; *see also* A44, A47-48, A62-63, A65, A71, A82.  The court did not hold, and the prosecution does not contend, that any of President Trump's public statements constitute threats, "fighting words," or incitement to imminent lawless action.  *See* A13; *see also Counterman v. Colorado*, 600 U.S. 66, 73 (2023); *Brandenburg v. Ohio*, 395 U.S.

13

444, 447 (1969).  Thus, the Gag Order restricts President Trump's speech based solely upon the anticipated *reaction* of unidentified, independent third parties.

This is a classic heckler's veto, which the First Amendment categorically forbids.  Under the First Amendment, public speakers "are not chargeable with the danger" that their audiences "might react with disorder or violence."  *Brown v. Louisiana*, 383 U.S. 131, 133 n.1 (1966) (opinion of Fortas, J.).  "[T]he compelling answer is that constitutional rights may not be denied simply because of hostility to their assertion or exercise."  *Cox v. Louisiana*, 379 U.S. 536, 551 (1965) (cleaned up) (citing *Edwards v. South Carolina*, 372 U.S. 229, 237 (1963); and *Watson v. City of Memphis*, 373 U.S. 526, 535 (1963)); *see also, e.g., Forsyth County v. Nationalist Movement*, 505 U.S. 123, 134-35 (1992) ("Speech cannot be … punished or banned, simply because it might offend a hostile mob."); *Collin v. Chicago Park Dist.*, 460 F.2d 746, 754 (7th Cir. 1972).

"The Government may not insulate a law from charges of viewpoint discrimination by tying censorship to the reaction of the speaker's audience."  *Matal v. Tam*, 582 U.S. 218, 250 (2017) (Kennedy, J., concurring in part and concurring in the judgment).  "Indeed, a speech burden based on audience reactions is simply government hostility and intervention in a different guise."  *Id.*  Yet that is what the Gag Order does.

14

### 6.    The Gag Order shields public figures from public criticism.

Further, the Gag Order silences public criticism of quintessential public figures—speech entitled to the highest level of First Amendment protection. The Special Prosecutor and his team are high-level government officials who volunteered for highest-profile criminal case in modern history, and thus "thrust" themselves "into the vortex of this public issue." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 352 (1974). Likewise, the "witnesses" who supposedly might be "intimidated" by President Trump's speech are former officials from the highest echelons of government who have repeatedly attacked President Trump and his fitness for the Presidency in public statements, national media interviews, and books.

Any government official with "such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it" is a public figure. *Rosenblatt v. Baer*, 383 U.S. 75, 86 (1966). Every prosecutor on the case, and every potential witness identified by the prosecution, easily clears this bar. *See, e.g., Crane v. Ariz. Republic*, 972 F.2d 1511, 1525, 1524-25 (9th Cir. 1992) (prosecutor and head of federal task force are public officials); *ACLU, Inc. v. Zeh*, 864 S.E.2d 422, 437-38 (Ga. 2021) (county public defender for misdemeanors is a public official); *Diesen v. Hessburg*, 455 N.W.2d 446, 450 (Minn. 1990) (county attorney is public official). The First Amendment does not tolerate an order shielding such public figures from criticism.

Particularly offensive is the Gag Order's one-sided nature. It prevents President Trump from "targeting" senior public figures—such as Vice President Pence and Attorney General Barr—who routinely attack him and his fitness for the Presidency. And it prevents him from responding to the Special Prosecutor, who has made inflammatory public comments about President Trump, and whose team evidently leaks confidential details to the press. A290-291 n.6. The government "has no such authority to license one side of a debate to fight freestyle, while requiring the other to follow Marquis of Queensberry rules." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 391–92 (1992).

### 7. The Gag Order reflects forbidden viewpoint discrimination.

By forbidding speech that "target[s]" certain individuals, the Gag Order prohibits only (vaguely defined) *negative* speech about them. *See infra*, Part I.C. In *Matal v. Tam*, the Supreme Court held that prohibiting only negative or "disparaging" speech constitutes forbidden viewpoint discrimination. 582 U.S. 218, 243 (2017) (plurality opinion). Such a prohibition "constitutes viewpoint discrimination—a form of speech suppression so potent that it must be subject to rigorous constitutional scrutiny." *Id.* at 247 (Kennedy, J., concurring in part and concurring in the judgment). To prohibit "disparaging" speech "reflects the Government's disapproval of a subset of messages it finds offensive. This is the

16

essence of viewpoint discrimination." *Id.* at 249; *see also R.A.V.*, 505 U.S. at 391-92.  The Gag Order violates these principles.

### B.    The Gag Order Cannot Withstand Any Level of Scrutiny.

#### 1.    The prosecution did not establish any compelling interest.

First, the prosecution made no showing that suppressing President Trump's speech would serve any important or compelling interest.  The party seeking to justify a gag order regarding pending criminal proceedings bears "the heavy burden of demonstrating, in advance of trial, that without prior restraint a fair trial will be denied."  *Nebraska Press Ass'n*, 427 U.S. at 569.  This "heavy burden," *id.*, is an *evidentiary* burden: Where "the record is lacking in evidence to support" the gag order, it will not be upheld.  *Id.* at 565; *see also id.* at 563; *Landmark Commc'ns*, 435 U.S. at 843 (holding that "actual facts" are necessary to support a gag order).

By the time the Gag Order was entered, the case had been pending for almost three months, and President Trump had often spoken about it.  The prosecution provided seventeen examples of public statements by President Trump between August 2 and September 26, 2023, that it considered objectionable.  A140-46; A190-91.  However, it did not produce any evidence that any prosecutor, witness, or court staffer experienced "threats" or "harassment" after President Trump's speech.  Likewise, it did not produce any evidence that any witness or prosecutor *felt* threatened or intimidated by President Trump's speech—however subjectively—

17

during three months of President Trump's public commentary on the case. *See* A140-46; A190-91.

Instead, the prosecution relied on a handful of instances almost three years old. A137-39. When asked about the dearth of *current* evidence, the prosecution admitted, "of course this prejudice is speculative." A65. A prior restraint cannot be based on speculation. *Nebraska Press Ass'n*, 427 U.S. at 569. Even if unruly actions by President Trump's listeners could be considered—which they cannot, *supra* Part I.A.5—the prosecution failed to submit evidence to establish them.

### 2. The Gag Order is not narrowly tailored.

Moreover, the Gag Order is sweepingly overbroad, and thus it cannot survive any tailoring analysis.

First, the Gag Order did not adequately consider less restrictive alternatives. *See Nebraska Press Ass'n*, 427 U.S. at 562. The prosecution presented no evidence on this issue, and the district court's "findings" consisted of a bare, one-sentence recital. A1-2. As in *Nebraska Press Association*, "[t]here is no finding that alternative measures would not have protected [the defendant's] rights …. [T]he record is lacking in evidence to support such a finding." 427 U.S. at 565.

This deficiency is starkest with respect to the most obvious alternative— delaying the trial date until after the Presidential election. "[W]here there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the

18

judge should continue the case until the threat abates…." *Sheppard*, 384 U.S. at 363. Yet the district court categorically refused to consider this alternative. A23-24; *see also* A69, A82.

Furthermore, the Gag Order fails any tailoring analysis because it sweeps in vast amounts of First Amendment-protected speech that pose no plausible threat to the administration of justice. The entire Gag Order is overbroad because it is based on an impermissible heckler's veto theory. *Supra*, Part I.A.5. It prohibits statements criticizing major public figures who routinely attack President Trump, such as Mr. Barr and Mr. Pence, who deliberately invite debate with him. *Supra*, Part I.A.6. The Gag Order forbids public criticism of the Special Prosecutor, even though "[t]he operations of the courts and the judicial conduct of judges are matters of utmost public concern," and such speech "guards against the miscarriage of justice by subjecting … prosecutors … to extensive public scrutiny and criticism." *Landmark Commc'ns*, 435 U.S. at 839 (quoting *Sheppard*, 384 U.S. at 350). The Gag Order prohibits all statements that "target" any persons, which could include any statement that refers to them in any way. *See infra*, Part I.C. This is the antithesis of narrow tailoring.

### C.    The Gag Order Is Incurably Vague.

"[S]tandards of permissible statutory vagueness are strict in the area of free expression," and the Supreme Court "will not presume that the [restriction] curtails

constitutionally protected activity as little as possible." *NAACP v. Button*, 371 U.S. 415, 432 (1963); *see also Hynes v. Mayor & Council of Borough of Oradell*, 425 U.S. 610, 620 (1976); *Buckley v. Valeo*, 424 U.S. 1, 77 (1976) (per curiam).

The Gag Order fails to meet those exacting standards.  For example, its key operative word, "target," A3, could mean "a mark to shoot at," "something or someone marked for attack," "a goal to be achieved," "an object of ridicule or criticism," or "something or someone to be affected by an action or development," among other meanings.  *Target*, Merriam-Webster Online, at https://www.merriam-webster.com/dictionary/target.  Thus, the Gag Order might prohibit (1) any statement that refers to a person in any way; (2) only statements that "attack" a person; (3) only statements that "ridicule" or "criticize" someone; or (4) any statement that "affects" a person in any way, even without directly naming them.  *See id.*  The Supreme Court has rejected far more precise language.  *See, e.g., Nebraska Press Ass'n*, 427 U.S. at 568 (holding that the word "implicative" in a pretrial gag order was unconstitutionally vague).

In denying President Trump's motion for stay pending appeal, the district court held that any or all these meanings *might* apply: "[D]epending on their context, statements matching each of the definitions Defendant proffers for the term 'target' could pose such risks."  A298.  The statements that impermissibly "target" people, the district court explained, are those "that could result in a 'significant and

20

immediate risk' to 'the integrity of these proceedings.'" A298. Thus, the Gag Order boils down to an order directing President Trump not to say anything that presents "a significant and immediate risk to the integrity of these proceedings." A298.

This "clarification" makes the vagueness even worse. A gag order cannot simply command a party to "obey the law" and comply with a vague, potentially subjective legal standard. *See, e.g., Burton v. City of Belle Glade*, 178 F.3d 1175, 1201 (11th Cir. 1999). The threat of "arbitrary and discriminatory application" in such a case is palpable. *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972).

The Gag Order suffers from other vagueness problems as well. For example, it prohibits statements that "target … any reasonably foreseeable witness or the substance of their testimony." A3. The case involves millions of pages of discovery, and the universe of "reasonably foreseeable witness[es]" is unacceptably broad and indeterminate. A3. Even worse is the restriction on statements targeting "the substance of their testimony," a category that is completely unknowable months in advance of a potential trial. A3. Such restrictions create the risk of impermissible enforcement-by-hindsight, *i.e.*, "ad hoc and subjective" application. *Grayned*, 408 U.S. at 109.

## III.    The Remaining Equitable Factors Favor a Stay.

The remaining equitable factors favor a stay pending appeal.

21

*Irreparable Injury.*  "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod*, 427 U.S. at 373. President Trump's showing of likelihood of success necessarily establishes irreparable injury. *Phelps–Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008).  Indeed, the irreparable injuries to President Trump and his millions of listeners thus began at once.  They are immediate and ongoing.

*Harm to the Government.* The balancing of harms and the public interest "merge when the Government is the opposing party." *Nken*, 556 U.S. at 435.  Here, the potential harm to the government is minimal, as the prosecution admits that "of course this prejudice is speculative."  A65.  The Government suffers no cognizable injury from respecting the First Amendment rights of President Trump and over 100 million Americans.

*Public Interest.*  This factor is easily satisfied.  "Injunctions protecting First Amendment freedoms are always in the public interest." *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013).  And "it is always in the public interest to prevent violation of a party's constitutional rights."  *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*, 274 F.3d 377, 400 (6th Cir. 2001).

## CONCLUSION

The Court should stay the Gag Order pending appeal.  In addition, President Trump respectfully requests that the Court enter a temporary administrative stay pending resolution of this motion and issue its ruling by November 10, 2023.  If the Court denies this motion, President Trump requests that the Court extend its administrative stay for seven days to allow him to seek relief from the U.S. Supreme Court.

Dated: November 2, 2023                    Respectfully Submitted,

| | |
|---|---|
| LAURO & SINGER<br><br>John F. Lauro, Esq.<br>D.C. Circuit Bar No. 64896<br>jlauro@laurosinger.com<br>400 N. Tampa St., 15th Floor<br>Tampa, FL 33602<br>(813) 222-8990 | JAMES OTIS LAW GROUP, LLC<br><br>*/s/ D. John Sauer*<br>D. John Sauer<br>William O. Scharf<br>Michael E. Talent<br>13321 N. Outer Forty Road, Suite 300<br>St. Louis, Missouri 63017<br>(314) 562-0031<br>John.Sauer@james-otis.com<br><br>*Attorneys for President Donald Trump* |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on November 2, 2023, I caused a true and correct copy of the foregoing to be filed by the Court's electronic filing system, to be served by operation of the Court's electronic filing system on counsel for all parties who have entered in the case.

*/s/ D. John Sauer*

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5,152 words, excluding those portions pursuant to Federal Rule of Appellate Procedure 32(f), according to Microsoft Word.

This document complies with the typeface requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and the type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(6) because it was prepared in a proportionally spaced typeface in Microsoft Word utilizing 14-point Times New Roman font.

*/s/ D. John Sauer*
D. John Sauer

## CERTIFICATE OF PARTIES AND *AMICI CURIAE*

The parties in the district court include the United States of America and President Donald J. Trump.  The district court denied leave to file to proposed *amici curiae*.

*/s/ D. John Sauer*

## <u>DISCLOSURE STATEMENT</u>

No Disclosure Statement under Federal Rule of Appellate Procedure 26.1 or under Circuit Rule 26.1 is indicated, as Defendant is not a corporation or similar entity.

*/s/ D. John Sauer*