No. 23-3190

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

UNITED STATES OF AMERICA,

Appellee,

vs.

DONALD J. TRUMP,

Appellants,

Appeal from the United States District Court
for the District of Columbia

**BRIEF FOR AMICI CURIAE IOWA, WEST VIRGINIA, ALA-
BAMA, ALASKA, IDAHO, INDIANA, KANSAS, KENTUCKY,
LOUISIANA, MISSISSIPPI, MISSOURI, NEBRASKA,
NORTH DAKOTA, OKLAHOMA, SOUTH CAROLINA,
SOUTH DAKOTA, TEXAS, AND UTAH SUPPORTING DE-
FENDANT AND REVERSAL**

BRENNA BIRD
Attorney General of Iowa

Eric H. Wessan
Solicitor General
1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 823-9117
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov

ATTORNEYS FOR *AMICUS CURIAE* STATES

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................. 3

INTEREST OF AMICI STATES ..................................................... 5

ARGUMENT ................................................................................. 7

I.    Summary of Argument. ............................................................. 7

II.   The district court did not narrowly tailor its prior restraint to prevent imminent threats against individuals that would interfere with the administration of justice. ............................9

III.  The order does not satisfy the strict scrutiny required to justify prior restraints. ............................................................. 10

IV.   The Order is too vague to satisfy the strict scrutiny required to justify prior restraints. ........................................................ 14

V.    Interference with the ongoing presidential election weighs against a prior restraint in general and against this vague, overbroad order in general. .................................................... 19

CONCLUSION................................................................................ 21

CERTIFICATE OF COMPLIANCE ............................................... 22

CERTIFICATE OF SERVICE ....................................................... 22

# TABLE OF AUTHORITIES

Cases

*Burton v. City of Belle Glade,*
    178 F.3d 1175 (11th Cir. 1999) .................................................. 17
*Grayned v. City of Rockford,*
    408 U.S. 104 (1972) ....................................................... 16, 17, 18
*Int'l Longshoremen's Ass'n, Loc. 1291 v. Phila. Marine Trade Ass'n,*
    389 U.S. 64 (1967) ..................................................................... 15
*Landgraf v. USI Film Prods., Inc.,*
    511 U.S. 244 (1994) ................................................................. 15
*Landmark Commc'ns, Inc. v. Virginia,*
    435 U.S. 829 (1978) ............................................................ 10, 11
*McCutcheon v. Fed. Election Comm'n,*
    572 U.S. 185 (2014) ............................................................... 5, 9
*Missouri v. Biden,*
    83 F.4th 350 (5th Cir. 2023) ................................................ 19, 20
*Morse v. Frederick,*
    551 U.S. 393 (2007) ...................................................................... 5
*NAACP v. Button,*
    371 U.S. 415 (1963) ...................................................................... 8
*Nebraska Press Ass'n v. Stuart,*
    427 U.S. 539 (1976) .................................................. 10, 11, 13, 15
*NetworkIP, LLC v. FCC,*
    548 F.3d 116 (D.C. Cir. 2008) .................................................... 15
*Payne v. Travenol Labs., Inc.,*
    656 F.2d 895 (5th Cir. 1978) ................................................ 17, 18
*Republican Party of Minn. v. White,*
    536 U.S. 765 (2002) ...................................................................... 5
*Sheppard v. Maxwell,*
    384 U.S. 333 (1966) ...................................................................... 8
*United States v. Brewster,*
    408 U.S. 501 (1972) .................................................................... 12
*United States v. Ford,*
    830 F.2d 596 (6th Cir. 1987) ......................................... 11, 12, 14
*United States v. Trump,*
    2023 WL 6818589 (D.D.C. Oct. 17, 2023) ..................... 6, 8, 9, 12

*Virginia v. Black,*
   538 U.S. 343 (2003) ........................................................... 5

*Wagner v. FEC,*
   793 F.3d 1 (D.C. Cir. 2015) ............................................. 9

Statutes

U.S. Const. amend. 1 ...................................................... 5

Rules

Federal Rule of Appellate Procedure 29(a)(2) ................................ 7

## INTEREST OF AMICI STATES

The States of Iowa, West Virginia, Alabama, Alaska, Idaho, Indiana, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Montana, North Dakota, South Carolina, South Dakota, Texas, Oklahoma, and Utah stand foursquare behind the protections of the First Amendment of the Constitution. No branch of government may abridge free speech. U.S. Const. amend. 1.

That right is paramount when it comes to protected political speech. Indeed, "[p]olitical speech . . . is 'at the core of what the First Amendment is designed to protect.'" *Morse v. Frederick*, 551 U.S. 393, 403 (2007) (quoting *Virginia v. Black*, 538 U.S. 343, 365 (2003) (plurality opinion)); *see Republican Party of Minn. v. White*, 536 U.S. 765, 793 (2002) ("The political speech of candidates is at the heart of the First Amendment, and direct restrictions on the content of candidate speech are simply beyond the power of government to impose.") (Kennedy, J., concurring); *McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 228 (2014) ("Political speech is the primary object of First Amendment protection and the lifeblood of

a self-governing people.") (Thomas, J., concurring in the judgment) (cleaned up).

The district court here overstepped its role in issuing an overly broad order denying Defendant, President Donald J. Trump, from making public statements about "individuals involved in the judicial process." Order (Dkt. 105), *United States v. Trump*, 2023 WL 6818589, at *1 (D.D.C. Oct. 17, 2023). The court imposed "limited restrictions on extrajudicial statements" that hinder and inhibit the ongoing presidential campaign, particularly as applied to limiting President Trump's ability to make statements about witnesses who are themselves part of that campaign. That overbroad Order—an order that a major United States presidential candidate mute himself on a major campaign issue—cannot survive any level of scrutiny.

Beyond its overbreadth, the Order is impermissibly vague. By failing to articulate what it means to "target" the individuals the Order identifies, the Court's prior restraint will unlawfully chill President Trump's speech. *Id.* at *3.

Amici States are home to upcoming caucuses and primaries. As administrators of free and fair elections, we have an interest in ensuring no illegal prior restraint is entered against any major political candidate. Indeed, our citizens have an interest in hearing from major political candidates in that election. The Order threatens the States' interests by infringing on President Trump's free speech rights.

Accordingly, Amici States file this brief in support of Defendant under Federal Rule of Appellate Procedure 29(a)(2).

## ARGUMENT

### I. Summary of Argument.

Former President Donald Trump is the Republican front-runner for President of the United States. Even were he not, President Trump enjoys First Amendment rights to speak—and American citizens enjoy an essential right to hear what he has to say. President Trump is also currently the defendant in the underlying case.

But that does not justify the district court's slapping President Trump with this prior restraint. Courts no doubt must ensure that they "take such steps by rule and regulation that will protect [their] processes from prejudicial outside interferences." Order at

7

*1 (quoting *Sheppard v. Maxwell*, 384 U.S. 333, 363 (1966)). The record before the district court here, however, makes it doubtful that it could justify any restraint, much less this one, which is both too vague and too broad. Those twin deficiencies beg for this Court's correction.

First, while the district court correctly raised First Amendment concerns in its order, *id.* at *1, it misapplied the binding strict-scrutiny standard, which does not justify issuing a prior restraint against President Trump, *see id.* at *3. This overly broad order cannot survive any tailoring analysis.

Second, the district court failed to meet the standards required to ensure its order was clear enough to avoid being impermissibly vague. Courts do "not presume that [restriction] curtails constitutionally protected activity as little as possible;" rather, they must scrupulously ensure that is so. *NAACP v. Button*, 371 U.S. 415, 432 (1963).

Finally, the presidential campaign is in full swing. Iowa's first-in-the-nation caucuses are 62 days away—two months from

the filing of this brief. As Americans turn their attention to the up-coming presidential election, there should be special care taken to ensure that they can judge the candidates on their own merits. En-tering a prior restraint that may limit a candidate's ability to cam-paign must meet the exacting standards.

## II. The district court did not narrowly tailor its prior re-straint to prevent imminent threats against individuals that would interfere with the administration of justice.

The order prevents "all interested parties," including "the par-ties and their counsel," from "making any public statements, or di-recting others to make any public statements, that *target*" the pros-ecution team, defense counsel, court staff, or "any *reasonably fore-seeable* witness or the *substance of their testimony*." Order at *3 (emphases added). It purports to find that President Trump—and his counsel—pose a "significant and immediate risk" of prejudicing the ongoing legal process. *Id.* at *1. In so doing, the Order fails to be the "least restrictive means to further" the Government's com-pelling interest. *Wagner v. FEC*, 793 F.3d 1, 5 (D.C. Cir. 2015) (quot-ing *McCutcheon*, 572 U.S. at 197). Thus, it fails to satisfy strict scru-tiny. *Id.* The district court's analysis falls short and prohibits too

much speech. The short order also elides the complexity of this issue and fails to justify itself. This Court should reverse.

## III.    The order does not satisfy the strict scrutiny required to justify prior restraints.

"[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). Restricting speech about ongoing judicial proceedings requires showing a "clear and present danger to the administration of justice." *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 844 (1978). Indeed, *Nebraska Press* rejected prior restraints imposed on press coverage of a high-profile murder trial—even at the risk of prejudicing a small-town jury pool. *Nebraska Press*, 427 U.S. at 562.

The party seeking such a restrictive order pending a criminal trial bears "the heavy burden of demonstrating, in advance of trial, that without prior restraint a fair trial will be denied." *Id.* at 569. That heavy evidentiary burden must be met for an order to issue. Where the record lacks "evidence to support" such an order, it will not be upheld. *Id.* at 565; *see Landmark,* 435 U.S. at 843.

10

In holding the already-narrowed restraint in *Nebraska Press* unconstitutional, the Supreme Court set forth three factors governing whether a prior restraint is justified: (1) whether that publicity would "impair the defendant's right to a fair trial;" (2) whether "measures short of an order" of restraint might have impaired a fair trial; and (3) whether the restraint would be effective in ensuring a fair trial. *Id.* at 562–66. Weighing those factors, the Court could not determine "that the restraining order actually entered would serve its intended purpose," *id.* at 569. It held that the Nebraska Supreme Court failed to demonstrate "the degree of certainty our cases on prior restraint require." *Id.* Finding the evidence to support the restraint wanting, the Court concluded that while "the guarantees of freedom of expression are not an absolute prohibition under all circumstances . . . the heavy burden imposed as a condition to securing a prior restraint was not met." *Id.* at 570.

The Sixth Circuit, too, employed the "clear and present danger" test when considering whether a politician-defendant could express himself outside the courtroom. *United States v. Ford*, 830 F.2d

596, 598 (6th Cir. 1987). The court held that the defendant, a Democrat, was entitled to "attack the alleged political motives of the Republican administration which he claims is persecuting him because of his political views and his race." *Id.* at 600–01.

The Sixth Circuit recognized that "separation of powers—a unique feature of our constitutional system designed to insure that political power is divided and shared—would be undermined if the judicial branch should attempt to control political communication between a congressman and his constituents." *Id.* at 601. A politician's role "includes communications with the electorate." *Id.* (citing *United States v. Brewster*, 408 U.S. 501, 524 (1972)).

Here, the Order was imposed after the case against President Trump had been pending for almost three months. *See United States v. Trump*, No. 23-3190, Doc. 2025149, at *17. The prosecution introduced no evidence that any group protected by the entered order—prosecutor, witness, or court staff—experienced threats or harassment following any of President Trump's "communications with the electorate." *Id.* The Court found the Government introduced "[u]ndisputed testimony" that "when Defendant has publicly

attacked individuals, including on matters related to this case, those individuals are consequently threatened and harassed." Order at *2.

Fair enough. But the Court's abbreviated analysis did not connect President Trump's public pronouncements to the attacks. Unlike criminal defendants in a standard case, there is significant national media attention and analysis that follow any of President Trump's statements. To justify a prior restraint the Court must more thoroughly explain why it believes President Trump is causing the harassment here. Even if the prior restraint issued, there is no "degree of certainty" that the Order's prior restraint will work. *See Nebraska Press*, 427 U.S. at 569. Without any evidence—much less compelling evidence—the Order must fail strict scrutiny.

Moreover, a prior restraint against "any reasonably foreseeable witness or the substance of their testimony" goes too far. *See* Order at *3. At least one potential witness is now campaigning for the Republican nomination against President Trump. Other potential witnesses are speaking about President Trump's candidacy. And multiple candidates campaigning against him have invoked

the criminal charges against President Trump. But under the district court's prior restraint, President Trump's responses are forbidden. That cannot be the narrowest possible ground that ensures the fair administration of justice.

The Sixth Circuit's admonitions against a district court's intervening between a politician and his constituents were prescient. *See Ford*, 830 F.2d at 600–602. President Trump is actively campaigning for—is the leading Republican candidate for—the presidency. The district court's broad order interrupts President Trump's right to "communicat[e] with the electorate." *Id.* at 602. This case—the propriety of bringing it, the motives for doing so, and the process the Biden Administration continues to employ in pursuing it—is a central issue in his reelection campaign. And rather than protect President Trump's ability to discuss that issue on the campaign trail, the district court's prior restraint muzzles him. This Court should reverse.

## IV. The Order is too vague to satisfy the strict scrutiny required to justify prior restraints.

Even more concerning than the Order's overbreadth is its vagueness. As explained above, the Order prevents President

Trump and his counsel from "making any public statements . . . that target" four broad categories of persons. Order at *3. Court orders "founded upon a decree too vague to be understood" are impermissible. *See Int'l Longshoremen's Ass'n, Loc. 1291 v. Phila. Marine Trade Ass'n*, 389 U.S. 64, 76 (1967). The Order has problems both with what it prevents President Trump from doing—targeting—and with the ill-defined objects of its protection.

"[E]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly." *NetworkIP, LLC v. FCC*, 548 F.3d 116, 123 (D.C. Cir. 2008) (cleaned up) (quoting *Landgraf v. USI Film Prods., Inc.*, 511 U.S. 244, 265 (1994)). Those fairness considerations have been "well-established for 'centuries.'" *Id.* Indeed, the Supreme Court rejected as unconstitutionally vague the word "implicative" in *Nebraska Press*. 427 U.S. at 568.

Just like "implicative," the meaning of "target" is unclear. It could mean "a mark to shoot at" or "something or someone marked for attack;" it could also mean "a goal to be achieved," "an object of

ridicule or criticism," or "someone to be affected by an action or development," among other meanings. *Target*, Merriam-Webster Online, at https://www.merriamwebster.com/dictionary/target. The district court must give President Trump clarity as to what, precisely, is prohibited or else it fails to give the fair warning the Constitution requires. Without that fair warning, it is almost certain to impermissibly chill his political speech. *See Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972) (listing ways in which impermissible vagueness can run amuck).

Beyond the slipperiness of "target," the Order also has a problem with its objects. The Order forbids President Trump from "target[ing]" a potential witness—even a potential caucus opponent—by identifying him or calling for his voters to vote against him. Order at *3. But it is unclear who the universe of potential "reasonably foreseeable witness[es]" includes. *Id.*

The Order's vagueness here restricts speech by inevitably leading President Trump and his counsel "to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were

16

clearly marked." *Grayned*, 408 U.S. at 109 (cleaned up). That "in-hibit[s] the exercise of" First Amendment guaranteed freedoms. *Id.* And that is why courts require that such prior restraints cannot simply tell a party to "obey the law." *Burton v. City of Belle Glade*, 178 F.3d 1175, 1201 (11th Cir. 1999) (quoting *Payne v. Travenol Labs., Inc.*, 656 F.2d 895, 898 (5th Cir. 1978)).

What the Order prohibits is so vague that it shades into self-contradiction. The order simultaneously forbids President Trump, for example, from making statements that target potential wit-nesses—like Vice President Pence—and then explicitly says that President Trump may "criticiz[e] the campaign platforms or policies of Defendant's current political rivals, such as former Vice Presi-dent Pence." Order at *3. President Trump must carefully parse his every word to avoid mention of the possible substance of Vice Pres-ident Pence's possible testimony. But only the federal government and Vice President Pence know what is in Vice President Pence's potential testimony, should he even be a witness.

For another example, the Order allows President Trump to criticize "the government generally" including "the Department of

Justice," which is, according to the Order, different from "targeting" the court or the special counsel. *Id.* How can that be?

Fear of failure to comply with the Order while also speaking on matters of political importance during a campaign is an almost axiomatic example of a court order that can chill speech. The Order's subjects cannot know what is fair criticism and what crosses into contempt. Is the line drawn at President Trump identifying members of "the government generally" by name or position? Is he prohibited from making statements about the weakness of the case against him because that "targets" the special counsel or a witness's testimony? Is he entitled to talk about how accusations (without specifying the source) are wrong or fail to tell the whole story, or is that a comment on testimony or a witness? Requiring someone to ask those questions answers whether that person's speech is chilled.

The risk of "ad hoc and subjective" enforcement is too high. *Grayned*, 408 U.S. at 109. This Court should reverse the Order as impermissibly vague.

## V. Interference with the ongoing presidential election weighs against a prior restraint in general and against this vague, overbroad order in general.

The Order effectively prohibits President Trump from discussing a major campaign issue only two months before the Iowa caucuses—with Super Tuesday a mere six weeks after that. The citizens of our States have a right to hear from the candidates on important issues—including when one of those issues is an ongoing prosecution against that candidate.

Many officials engage in the rough-and-tumble of politics. Already there have been circumstances where overzealous federal government action has led to stifling of state elected officials' voices. *Missouri v. Biden*, 83 F.4th 350, 371–72 (5th Cir. 2023), *cert. granted sub nom. Murthy v. Missouri*, No. 23-411 (U.S. Oct. 20, 2023). The risk that follows upholding the Order of future prior restraints issued against political candidates in other contexts is deeply unsettling. Political opponents and opportunistic litigators may seek to stymie debate by relying on the precedent set here. Such an outcome would be an unwelcome burden on the democratic process.

Elections—including primary elections—are a prime opportunity for elected officials to hear from their constituents. Recently, the Fifth Circuit explained the importance of a limited "right to hear" constituents. *Id.* at 373. Issuing a prior restraint against a candidate means that constituents cannot hear how the candidate will reply to a given issue of concern.

Relevant here, the Fifth Circuit recognized that restricting officials' speech obstructs their "crucial interest in listening to their citizens." *Id.* When the "federal government coerces or substantially encourages third parties to censor certain viewpoints, it hampers the states' right to hear their constituents and, in turn, reduces their ability to respond to the concerns of their constituents." *Id.* So if President Trump wants to weigh in on a subject covered by the prior restraint and is restrained from doing so, his constituents will be denied by the federal government an opportunity to have him listen.

The presidential election is a key component in our democratic republic. A prior restraint on a major party candidate in a primary—much less a potential general election candidate—stands

just as likely to inhibit communication between constituents and officials. President Trump is being restrained from discussing matters of importance with his potential constituents—and the States are being prohibited from learning from those conversations about potential matters of importance.

Given the magnitude—in importance and effect—of such an overly broad and vague prior restraint on President Trump's speech, this Court should reverse.

## CONCLUSION

This Court should reverse.

Respectfully submitted,

BRENNA BIRD
Attorney General of Iowa

*/s/ Eric H. Wessan*
ERIC H. WESSAN
Solicitor General
1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 823-9117
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov

ATTORNEYS FOR
AMICI CURIAE

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(4)(G) and 32(g)(1) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), this document contains 2,925 words. It also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century School-book font.

/s/ *Eric H. Wessan*
Solicitor General

## CERTIFICATE OF SERVICE

The undersigned certifies that on the fifteenth day of November 2023, this brief was electronically filed with the Clerk of Court using the CM/ECF system, which will serve all counsel of record.

/s/ *Eric H. Wessan*
Solicitor General

*Counsel for Additional* Amici *States*

PATRICK MORRISEY
Attorney General of
West Virginia

TREG TAYLOR
Attorney General of Alabama

STEVE MARSHALL
Attorney General of Alabama

RAÚL R. LABRADOR
Attorney General of Idaho

THEODORE E. ROKITA
Attorney General of Indiana

KRIS KOBACH
Attorney General of Kansas

DANIEL CAMERON
Attorney General of Kentucky

JEFF LANDRY
Attorney General of Louisiana

LYNN FITCH
Attorney General of Mississippi

ANDREW T. BAILEY
Attorney General of Missouri

AUSTIN KNUDSEN
Attorney General of Montana

MICHAEL T. HILGERS
Attorney General of Nebraska

DREW WRIGLEY
Attorney General of
North Dakota

GENTNER DRUMMOND
Attorney General of
Oklahoma

ALAN WILSON
Attorney General of
South Carolina

MARTY JACKLEY
Attorney General of South
Dakota

KEN PAXTON
Attorney General of Texas

SEAN D. REYES
Attorney General of Utah