**ORAL ARGUMENT SCHEDULED FOR NOV. 20, 2023**

No. 23-3190

---

# In the United States Court of Appeals
## for the District of Columbia Circuit

———————————

UNITED STATES OF AMERICA,

*Appellee,*

v.

DONALD J. TRUMP,

*Defendant-Appellant.*

———————————

On Appeal from the United States
District Court for the District of Columbia
Case No. 23-cr-00257 (Chutkan, U.S.D.J.)

---

**[Proposed] Brief of *Amicus Curiae pro Se* Jeremy Bates
in Support of the United States and Dismissal**

---

Jeremy Bates
21 West Street Apt. 21J
New York, New York 10006
917-626-2473
jeremybates3@gmail.com
*Amicus Curiae pro Se*

November 19, 2023

# Table of Contents

Table of Authorities.......................................................................... iii

Glossary .......................................................................................... 1

Statement as to Jurisdiction ......................................................... 1

Statement of the Issue ................................................................. 1

Statement of Identity, Interest in Case, and
    Source of Authority To File.................................................... 2

Statement of Authorship and Financial Contributions ............... 3

Summary of Argument ................................................................. 4

Argument ...................................................................................... 5

I.   **In this Court, Defendant Trump requests—and
     has already obtained—relief in equity** ......................... 5

    A.  A stay by an appellate court of an order made by a
        trial court is an injunction—equity's epitome ............... 6

    B.  In the District Court, Defendant Trump conceded
        that the *Nken* factors are "equitable" ........................... 7

    C.  In this Court, Defendant Trump justifies jurisdiction
        under 28 U.S.C. § 1292(a)(1), governing injunctions....... 8

**II. Every party who seeks relief in equity must come to court with clean hands** ........................... 10

   A. The unclean-hands doctrine forbids relief in equity for one who has acted inequitably as to the matter in litigation ....................... 10

   B. The unclean-hands doctrine may be applied *sua sponte* ............................................... 12

**III. Defendant Trump's hands are unclean** ......................... 14

   A. Defendant Trump has admitted facts that establish that his hands are unclean ............................ 14

   B. The United States has compiled further facts showing that Defendant Trump has unclean hands ...... 15

   C. The Court may take notice of other proceedings that establish that Defendant Trump has unclean hands ..... 16

**IV. The Court should dissolve the administrative stay, deny any further stay, and dismiss this appeal** ........... 18

Conclusion ...................................................... 19

Certificate of Compliance .............................................. 20

Certificate of Service ................................................. 21

# Table of Authorities

## Cases

*Art Metal Works, Inc.* v. *Abraham & Straus, Inc.*,
  70 F.2d 641 (2d Cir. 1934) ................................................................ 13

*Bates* v. *D.C. Board of Elections & Ethics*,
  625 A.2d 891 (D.C. 1993) .................................................................. 2

*Bates on behalf of United States* v. *Trump*,
  2022 WL 453397 (2d Cir. Feb. 15, 2022) .......................................... 3

*Bates* v. *Trump*, No. 21-1389,
  2022 WL 2295592 (U.S. June 27, 2022) ............................................ 3

*Bein* v. *Heath*,
  47 U.S. 228 (1848) ...................................................................... 10, 12

*Bodley* v. *Jones*,
  59 A.2d 463 (Del. 1947) .................................................................... 11

*Carlisle* v. *United States*,
  517 U.S. 416 (1996) ........................................................................... 9

*Carson* v. *Am. Brands, Inc.*,
  450 U.S. 79 (1981) ............................................................................. 8

*Clinton* v. *Goldsmith*,
  526 U.S. 529 (1999) ........................................................................... 9

*Danco Labs., LLC* v. *Alliance for Hippocratic Medicine*,
  No. 22A901, 598 U.S. __ (U.S. April 21, 2023) .......................... 6, 14

*Deweese* v. *Reinhard*,
  165 U.S. 386 (1897) ......................................................................... 10

*Eastman* v. *Thompson*,
  2022 WL 894256 (C.D. Cal. Mar. 28, 2022) ................................... 16

*Gaudiosi* v. *Mellon*,
  269 F.2d 873 (3d Cir. 1959) ............................................................. 13

iii

*Hall* v. *Wright*,
   240 F.2d 787 (9th Cir. 1957) ........................................................ 13

*Highmark, Inc.* v. *UPMC Health Plan, Inc.*,
   276 F.3d 160 (3d Cir. 2001) ........................................................ 13

*Hill* v. *McDonogh*,
   547 U.S. 573 (2006) ..................................................................... 6

*In re McKenzie*,
   180 U.S. 536 (1901) ...................................................................... 6

*In re Napster, Inc. Copyright Litig.*,
   191 F. Supp. 2d 1087 (N.D. Cal. 2002) .................................... 13

*Karpenko* v. *Leendertz*,
   619 F.3d 259 (3d Cir. 2010) ........................................................ 13

*Keystone Driller Co.* v. *Gen'l Excav. Co.*,
   290 U.S. 240 (1933) ......................................................... 5, 11, 14

*Kitchen* v. *Rayburn*,
   86 U.S. 254 (1873) ...................................................................... 12

*Mfrs.' Fin. Co.* v. *McKey*,
   294 U.S. 442 (1935) ..................................................................... 10

*Nken* v. *Holder*,
   556 U.S. 418 (2009) .................................................................. 7, 8

*Performance Unlimited, Inc.* v. *Questar Pub's, Inc.*,
   52 F.3d 1373 (6th Cir. 1995) ...................................................... 11

*Precision Instr. Mfg. Co.* v. *Automotive Maint. Mach. Co.*,
   324 U.S. 806 (1945) .............................................................. 11, 12

*Sierra Club* v. *U.S. Dep't of Agriculture*,
   716 F.3d 653 (D.C. Cir. 2013) ..................................................... 8

*United States* v. *Howell*,
   425 F.3d 971 (11th Cir. 2005) .................................................... 12

## Statute and Former Rule

28 U.S.C. § 1292(a)(1) .......................................................... 1, 9

Former Equity Rule 74 ............................................................ 6


## Other Authorities

19 J. Moore & G. Pratt, Moore's Fed. Practice § 204.02[4] (1998) ......... 9

Andrew Goudsward, *Colorado judge finds Trump engaged in ‘insurrection’ but allows him on ballot*, Reuters, Nov. 18, 2023, https://www.reuters.com/legal/colorado-judges-allows-trump-primary-ballot-delays-decision-general-election-2023-11-18/ ........ 17

Benjamin Weiser, *Trump's Next Defamation Trial Will Skip to What Damages He Should Pay*, N.Y. Times, Sept. 6, 2023, https://www.nytimes.com/2023/09/06/nyregion/trump-e-jean-carroll-defamation-trial-january.html ............................................ 17

Cortney E. Lollar, *Invoking Criminal Equity's Roots*, 107 Virginia L. Rev. 495 (2021) ...................................................... 19

James D. Zirin, *Plaintiff in Chief: A Portrait of Donald Trump in 3500 Lawsuits* (2019) ......................................... 17

Jeffrey C. Dobbins, *The Inherent and Supervisory Power*, 54 Ga. L. Rev. 411 (2020) ..................................................... 7

Rachel Bayefsky, *Administrative Stays: Power and Procedure*, 97 Notre Dame L. Rev. 1941 (2022) .................................................. 7

Richard Francis, *Maxims of Equity* (3d ed. 1791) ................................. 5

Superseding Indictment Doc. 85 ¶ 83, *United States* v. *Trump*, No. 9:23-cr-80101-AMC (S.D. Fla. July 27, 2023) ............................ 3

United States Attorney's Office—District of Columbia, *30 Months Since the Jan. 6 Attack on the Capitol*, https://www.justice.gov/usao-dc/30-months-jan-6-attack-capitol ......................................... 16

## Glossary

| | |
|---|---|
| Br. | Opening Brief of Defendant Trump |
| Defendant Trump | Defendant-Appellant Donald J. Trump |
| JA__ | Joint Appendix at [page number] |
| Order | Order that this Court administratively stayed, made by The Hon. Tanya S. Chutkan, U.S.D.J., at Dkt. 105 in *United States* v. *Trump*, No. 1:23-cr-00257 (D.D.C. Oct. 17, 2023); *see* JA229–31 |
| Reply | Reply Brief of Defendant Trump |
| United States | Appellee the United States of America, as represented by the Office of Special Counsel, United States Department of Justice |
| U.S.Br. | Answering Brief for the United States |

## Statement as to Jurisdiction

Bates notes the alternative theory of jurisdiction advanced by Defendant Trump (Br. at 4–5)—that the Order granted an injunction, and that the Order is now appealable under 28 U.S.C. § 1292(a)(1), which governs injunctions.

## Statement of the Issue

1.    Whether Defendant Trump's requests for relief in equity should be denied because he comes to this Court with unclean hands.

1

### Statement of Identity, Interest in Case, and
### Source of Authority to File

Bates is a New York lawyer.  As an individual, he does not need authority from anyone to file.  He has four interests in this appeal.

First, Bates is a citizen and taxpayer.  Like most Americans, Bates has an interest in ensuring that justice be established, that domestic tranquility be insured, and that the Constitution of the United States be preserved, protected, and defended.

Second, like 81 million other Americans in the 2020 presidential election, Bates voted for Joseph Biden.  Thus Bates is one victim of the conspiracy, charged by the grand jury, to injure Americans in the "free exercise and enjoyment of a right and privilege secured to them by the Constitution and laws . . . —that is, the right to vote, and to have one's vote counted."  JA64.  Bates has defended his right to vote, and to have his vote counted, before.  *See Bates* v. *D.C. Board of Election & Ethics*, 625 A.2d 891 (D.C. 1993) (establishing American rule in D.C. elections).

Third, like many attorneys, who are officers of courts, Bates has an interest in ensuring that courts of equity do not grant any remedy that abets Defendant Trump's misconduct and abuse.

Fourth, on January 19, 2021, Bates sued Defendant Trump derivatively on behalf of the United States of America for breach of fiduciary duty to the United States.  *See Bates on behalf of United States* v. *Trump*, No. 21-1533, 2022 WL 453397 (2d Cir. Feb. 15, 2022).

In that case, certiorari was denied at 9:30 a.m. on June 27, 2022. *Bates* v. *Trump*, No. 21-1389, 2022 WL 2295592 (U.S. June 27, 2022).

A grand jury charged Defendant Trump with obstructing justice only eighteen minutes later.  *See* Superseding Indictment Doc. 85 ¶ 83, *United States* v. *Trump*, No. 9:23-cr-80101-AMC (S.D. Fla. July 27, 2023) (alleging attempt to delete incriminating security-camera footage on "Monday, June 27, 2022, at 9:48 a.m.").

### Statement of Authorship and Financial Contributions

No one other than Bates authored this brief in whole or in part.

Bates has paid for this submission out of his personal funds.  No one other than Bates contributed any money intended to fund preparing or submitting this brief.

## Summary of Argument

Equity declines to aid iniquity.  Equity refuses to assist any party who comes to court with unclean hands.  This maxim counsels courts to ration equitable remedies and grant them only to parties who have acted properly.  Otherwise, courts of equity risk abetting misconduct.

Here, Defendant Trump invoked the Court's powers in equity and received a stay—which is an injunction, equity's epitome.  At the same time, Defendant Trump admits that he publicly abuses public officials, including court officers.  Indeed, he contends that his core political speech includes calling prosecutors "deranged" or "thugs."

So Defendant Trump concedes that he has acted inequitably. Indeed, he persists in using bully pulpits—now, his campaign to regain the White House—to commit misconduct against the United States and against its faithful officers.  Defendant Trump's core political speech consistently has been unconscionable, in bad faith, and inequitable.

Rarely has equity ever seen a party whose hands are so unclean. Equity should have shut its doors firmly against Defendant Trump. This Court should now dissolve the administrative stay, should deny any further stay, and should dismiss this appeal.

## Argument

As an eighteenth-century writer put it, "He that hath committed Iniquity, shall not have Equity." Richard Francis, *Maxims of Equity* 5 (3d ed. 1791). This maxim is known as the unclean-hands doctrine— "one of the fundamental principles upon which equity jurisprudence is founded." *Keystone Driller Co.* v. *Gen'l Excav. Co.*, 290 U.S. 240, 244 (1933). If a plaintiff has unclean hands with respect to the matter in suit, then a court of equity will hold that plaintiff "remediless." *Id*.

In this Court, Defendant Trump has avoided the word "equity." Even so, he seeks—indeed, he has already obtained—equitable relief. Now the traditional doctrine of unclean hands, however, counsels that the administrative stay be dissolved, that any further stay be denied, and that this appeal be dismissed.

## I.    In this Court, Defendant Trump requests— and has already obtained—relief in equity.

A stay of a lower court's injunction is itself an injunction. So Defendant Trump has already received equitable relief—the pending administrative stay. And he asks for more—a stay pending appeal.

On the merits, too, this appeal sounds in equity, as shown by Defendant's contentions below and his jurisdictional argument here.

### A.    A stay by an appellate court of an order made by a trial court is an injunction—equity's epitome.

As Justice Samuel A. Alito, Jr., wrote in dissent earlier this year, the "granting of a stay of a lower-court decision is an equitable remedy." *Danco Labs., LLC* v. *Alliance for Hippocratic Medicine*, No. 22A901, 598 U.S. __, __, slip op. at 3 (April 21, 2023) (Alito, J., dissenting).

This point is often made in capital cases, where courts describe stays of execution as equitable. *E.g.*, *Hill* v. *McDonogh*, 547 U.S. 573, 584 (2006) ("We state again . . . that a stay of execution is an equitable remedy."). If a stay of an execution, while a life hangs in the balance, must meet equitable standards despite due-process concerns and habeas guarantees, then any stay of the Order, which merely restricts Defendant Trump's public speech, should do the same.

The principle may have been clearer before the merger of law and equity. In 1901 the Supreme Court, upholding a stay issued by an appellate court, explained that "[t]ested by the principles and rules which relate to chancery proceedings, the power of the appellate court to render its jurisdiction efficacious, the court below refusing to do so, is unquestionable." *In re McKenzie*, 180 U.S. 536, 551 (1901); *see also* former Equity Rule 74 (governing "Injunction Pending Appeal").

Furthermore, an administrative stay of an injunction may be regarded as modifying the injunction by changing its effective date. *See* Rachel Bayefsky, *Administrative Stays: Power and Procedure*, 97 Notre Dame L. Rev. 1941, 1964 (2022).

Here, the District Court issued its Order under Local Criminal Rule 57.7. (JA231.) As the United States has shown, rules of this type arose after a 1966 case. (U.S.Br. at 8–10.) Such rules were not adopted in equity because the Equity Rules had been abrogated in the 1930s.

Still, in its current, post-merger form, "the inherent power of courts to exercise control over litigants is partly 'rooted in the notion that a federal court, sitting in equity, possesses all of the common law equity tools of a Chancery Court . . . to process litigation to a just and equitable conclusion.'" Jeffrey C. Dobbins, *The Inherent and Supervisory Power*, 54 Ga. L. Rev. 411, 431 (2020) (quoting *ITT Cmty. Dev. Corp.* v. *Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978)).

## B.  In the District Court, Defendant Trump conceded that the *Nken* factors are "equitable."

To be sure, the Supreme Court held in *Nken* that a stay was not an injunction within the textual meaning of an immigration statute. *Nken* v. *Holder*, 556 U.S. 418, 434 (2009). But as the *Nken* Court also

7

observed, "[a] stay pending appeal certainly has some functional overlap with an injunction, particularly a preliminary one." *Id.* at 428. And Justice Alito, dissenting as to the statutory reading, pointed out that in other contexts, courts and statutes refer to stays generally as injunctions. *Id.* at 442–43 (Alito, J., dissenting).

Here, when Defendant Trump moved the District Court for a stay pending appeal, he characterized all the *Nken* factors as "equitable." (JA263 (describing three *Nken* factors—irreparable injury, balancing of harms, and the public interest—as "the other equitable factors" and "The Remaining Equitable Factors").)

Thus in the District Court, Defendant Trump conceded that the *Nken* analysis of whether to grant a stay pending appeal is equitable.

## C.    In this Court, Defendant Trump justifies jurisdiction under 28 U.S.C. § 1292(a)(1), governing injunctions.

Similarly, Defendant Trump has invoked this Court's jurisdiction in equity. He says, in part, that the Order "is immediately appealable under 28 U.S.C. § 1292(a)(1)" because it "has the 'practical effect' of granting an injunction." (Br. at 4 (citing *Sierra Club* v. *U.S. Dep't of Agriculture*, 716 F.3d 653, 659 (D.C. Cir. 2013), which cited *Carson* v. *Am. Brands, Inc.*, 450 U.S. 79, 84 (1981)).)

8

The statute Defendant Trump relies on creates appellate jurisdiction over district-court orders granting injunctions:

> [T]he courts of appeals shall have jurisdiction of appeals from:
>     (1) Interlocutory orders of the district courts of the United States . . . , or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions . . . .

28 U.S.C. § 1292(a)(1).

And Defendant Trump characterizes the Order as an injunction. He criticizes the Order as an obey-the-law injunction. (Reply at 25; *see also* Br. at 24 ("This is an impermissible 'obey the law' injunction.").)

In the alternative, Defendant Trump asks for mandamus relief. (Br. at 5–6.)  But the All Writs Act granted traditional judicial powers, including equitable ones. *See*, *e.g.*, *Clinton* v. *Goldsmith*, 526 U.S. 529, 537 (1999) ("The All Writs Act invests a court with a power essentially equitable.") (citing *Carlisle* v. *United States*, 517 U.S. 416, 429 (1996)).[1]

For these reasons, this appeal sounds in equity.  In deciding the issues raised—the pending administrative stay, any further stay, and the Order's validity—the Court should look to equity's traditional rules.

---

[1] *See also* 19 J. Moore & G. Pratt, Moore's Fed. Practice § 204.02[4] (3d ed. 1998) ("The All Writs Act cannot enlarge a court's jurisdiction.").

II.   **Every party who seeks relief in equity must come to court with clean hands.**

That one who seeks relief in equity must have clean hands is a rule of long standing.  And it matters not whether this rule was raised below (it wasn't).  This Court may raise it *sua sponte* now.

A.   **The unclean-hands doctrine forbids relief in equity for one who has acted inequitably as to the matter in litigation.**

In 1848 the Supreme Court warned: "It is a principle in chancery that he who asks relief must have acted in good faith.  The equitable powers of this Court can never be exerted in behalf of one who has acted fraudulently, or who by deceit or [ ] unfair means has gained an advantage."  *Bein* v. *Heath*, 47 U. S. 228, 247 (1848).

This rule bars relief in equity for a party who has engaged in conduct that is "unconscionable or inequitable."  *Mfrs.' Fin. Co.* v. *McKey*, 294 U.S. 442, 451 (1935).  Courts ask not whether a party has broken a criminal law—an open issue here as yet—but rather whether the party has violated the "dictates of natural justice."  *Deweese* v. *Reinhard*, 165 U.S. 386, 390 (1897).  As the Supreme Court noted,

> [O]ne's misconduct need not necessarily have been of such a nature as to be punishable as a crime or as to justify legal proceedings of any character.  Any willful act concerning the cause

10

of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of the [unclean-hands] maxim by the chancellor.

*Precision Instr. Mfg. Co.* v. *Automotive Maint. Mach. Co.*, 324 U.S. 806, 815 (1945); *see also Performance Unlimited, Inc.* v. *Questar Pub's, Inc.*, 52 F.3d 1373, 1383 (6th Cir. 1995) (requiring "fraud, deceit, unconscionability, or bad faith"); *Bodley* v. *Jones*, 59 A.2d 463, 469 (Del. 1947) (requiring violation of conscience, good faith, or equitable principles).

That said, for the unclean-hands doctrine to apply, the misconduct must be directly related to the matter in litigation:

> [C]ourts of equity . . . apply the maxim requiring clean hands only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation. They do not close their doors because of plaintiff's misconduct, whatever its character, that has no relation to anything involved in the suit, but only for such violations of conscience as in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication.

*Keystone Driller*, 290 U.S. at 245.

Such a necessary relation is present here. (*See* Part III, *infra*.)

Moreover, the rule that unclean hands will bar relief in equity applies with special force in suits that concern the public interest:

> where a suit in equity concerns the public interest, as well as the private interests of the litigants, this doctrine assumes even wider

and more significant proportions. For if an equity court properly uses the maxim to withhold its assistance in such a case, it not only prevents a wrongdoer from enjoying the fruits of his transgression, but averts an injury to the public.

*Precision Instr.*, 324 U.S. at 815. Here, Defendant Trump concedes that this appeal concerns the public interest. (Br. at 34–36; Reply at 15–21.)

### B. The unclean-hands doctrine may be applied *sua* sponte.

Neither below nor here did the United States make the argument that Defendant Trump's inequitable conduct renders his hands unclean and disables him from seeking any relief in equity.[2]

Nevertheless, this Court may raise unclean hands *sua sponte.*

This is so because the unclean-hands doctrine prevents a party from using courts of equity to compound his own misconduct or "to derive an advantage from [his] own wrong." *Kitchen* v. *Rayburn*, 86 U.S. 254, 263 (1873). To be used in that way would make a court the "abetter of iniquity." *Bein*, 47 U.S. at 247. So the doctrine is designed

---

[2] That silence is odd, given that in another Trump prosecution, the United States cited a decision clearly explaining unclean hands: *United States* v. *Howell*, 425 F.3d 971, 974 (11th Cir. 2005) ("[N]o principle is better settled than the maxim that he who comes into equity must come with 'clean hands' and keep them clean throughout the course of the litigation, and that if he violates this rule, he must be denied all relief whatever may have been the merits of his claim.").

"to protect the court from becoming a party to the transgressor's misconduct." *In re Napster, Inc. Copyright Litig.*, 191 F. Supp. 2d 1087, 1111 (N.D. Cal. 2002). As Learned Hand, in dissent, wrote,

> The [unclean-hands doctrine] is confessedly derived from the unwillingness of a court, originally and still nominally one of conscience, to give its peculiar relief to a suitor who in the very controversy has so conducted himself as to shock the moral sensibilities of the judge. *It has nothing to do with the rights or liabilities of the parties*; indeed the defendant who invokes it need not be damaged, and the court may even raise it *sua sponte*.

*Art Metal Works, Inc.* v. *Abraham & Straus, Inc.*, 70 F.2d 641, 646 (2d Cir. 1934) (Hand, J., dissenting) (first italics added).[3]

"Public policy not only makes it obligatory for courts to deny a plaintiff relief once his 'unclean hands' are established[,] but to refuse to even hear a case under such circumstances." *Gaudiosi* v. *Mellon*, 269 F.2d 873, 882 (3d Cir. 1959). This logic supports dismissing this appeal.

Thus the Court may raise the unclean-hands doctrine *sua sponte*.

---

[3] *Accord Karpenko* v. *Leendertz*, 619 F.3d 259, 267 (3d Cir. 2010) ("[T]he equitable doctrine of unclean hands is not a matter of defense to the defendant. Rather, in applying it courts are concerned primarily with their own integrity."); *Highmark, Inc.* v. *UPMC Health Plan, Inc.*, 276 F.3d 160, 174 (3d Cir. 2001) ("[W]e may *sua sponte* apply the doctrine . . . ."); *Hall* v. *Wright*, 240 F.2d 787, 795 (9th Cir. 1957) ("In applying the unclean hands maxim, the court is 'concerned primarily with protecting its own integrity from improper action by a party.'").

### III. Defendant Trump's hands are unclean.

Because relief in equity "should not be given if the moving party has not acted equitably," *Danco*, *supra*, (Alito, J., dissenting), the question then becomes, which actions by the moving party matter?

What "unconscionable act[s]" by the movant have an "immediate and necessary relation to the equity that he seeks in respect of the matter in litigation[?]" *Keystone Driller*, 290 U.S. at 245. In other words, which "violations of conscience" by the one who seeks relief "affect the equitable relations between the parties in respect of something brought before the court for adjudication[?]" *Id.*

What Defendant Trump brings before this Court for adjudication is his public speech. So the Court should review Defendant Trump's public speech to determine whether it comports with equitable standards. It does not, as he effectively admits and as others confirm.

### A. Defendant Trump has admitted facts that establish that his hands are unclean.

Defendant Trump tries to frame the speech narrowly. He focuses on his "public statements about key aspects of his prosecution," his "public statements about this case," his "freedom to speak about the

case," or his "Core Political Speech About the Prosecution of President Trump."  (Br. at 1, 2, 3, 6.)

That narrow framing is, in part, an effort to suggest that the Order here is separate and distinct from the case below, and thus is immediately appealable.  (Br. at 2–4 (portraying Order as collateral).)

But even in that circumscribed ambit, Defendant Trump admits, as he must, that he called the prosecution "Deranged Jack Smith & his team of Thugs" and has publicly posted, "IF YOU GO AFTER ME, I'M COMING AFTER YOU!"  (Br. at 13, 15 n.7.; *see generally id*. at 12–17.)

Whether those are fighting words is beside the point; the unclean-hands doctrine does not seem to have any First Amendment exception.

So the Court needs nothing more to hold that Defendant Trump comes to equity with unclean hands.

## B.    The United States has compiled further facts showing that Defendant Trump has unclean hands.

If any more were needed, the United States has provided it.

The United States made a record in the District Court, and has summarized the record for this Court, of the ways in which Defendant Trump has used public speech to jeopardize the integrity of this case. (*See* U.S.Br. at 4–7.)

And as the United States points out, Defendant Trump's speech about this case, while it has been pending, is only part of the story. The Court should find that Defendant Trump has unclean hands by looking to the undisputed public speech for which the grand jury charged him and to his public speech about other proceedings. (*See* U.S.Br. at 6, 7, & 7 n.1 (describing other speech by Defendant).) [4]

### C. The Court may take notice of other proceedings that establish that Defendant Trump has unclean hands.

The Court may also take judicial notice of much else. Three proceedings are especially relevant here, because they involve courts addressing aspects of Defendant Trump's speech conduct:

(1)     *Eastman* v. *Thompson,* 2022 WL 894256, *22 (C.D. Cal. Mar. 28, 2022) (finding "more likely than not" that Defendant Trump committed obstruction); *id.* at *24 (same as to conspiracy to defraud United States);

---

[4] The January 6 attack on Congress has led, at last count, to the criminal convictions of 98 individuals after contested trials and approximately 594 people pleading guilty to various charges, including four to seditious conspiracy. United States Attorney's Office—District of Columbia, *30 Months Since the Jan. 6 Attack on the Capitol*, at https://www.justice.gov/usao-dc/30-months-jan-6-attack-capitol.

(2)     the defamation cases brought by another victim of

Defendant Trump;[5] and

(3)     the finding two days ago by a Colorado state court that

Defendant Trump committed insurrection within the

meaning of the Fourteenth Amendment.[6]

In all this, recall that Defendant Trump is a practiced litigant.

*See* James D. Zirin, *Plaintiff in Chief: A Portrait of Donald Trump in*

*3500 Lawsuits* (2019).  As this case and other proceedings illustrate,

when it comes to court orders, Defendant Trump knows what to do.

When enjoined, he is perfectly capable of ceasing his misconduct, as if

by turning off a switch.  He simply doesn't want to have to.

In sum, based on what Defendant Trump brings to the Court for

adjudication, the Court should now hold that Defendant Trump's hands

are unclean.  Therefore he should not receive any relief in equity.

---

[5] Benjamin Weiser, *Trump's Next Defamation Trial Will Skip to What Damages He Should Pay*, N.Y. Times, Sept. 6, 2023, available at https://www.nytimes.com/2023/09/06/nyregion/trump-e-jean-carroll-defamation-trial-january.html.

[6] Andrew Goudsward, *Colorado judge finds Trump engaged in 'insurrection' but allows him on ballot*, Reuters, Nov. 18, 2023, available at https://www.reuters.com/legal/colorado-judges-allows-trump-primary-ballot-delays-decision-general-election-2023-11-18/.

**IV.   The Court should dissolve the administrative stay, deny any further stay, and dismiss this appeal.**

When Defendant Trump first sought relief in equity here, it seems that the unclean-hands doctrine was not raised.  For whatever reason, this Court finds itself in the position of having granted interim relief in equity to perhaps the least deserving litigant in American legal history.

The first thing this Court should do is extricate itself.  The Court now should cease abetting Defendant Trump's misconduct.  The Court should dissolve the administrative stay and deny any further stay.

Next, the Court should apply the unclean-hands doctrine to dismiss this appeal.  By his own account, Defendant Trump appeals from an injunction.  So traditional equitable maxims apply.

Besides, courts of equity look past legal forms to realities.

Stripped of campaign pretenses, the reality here is that Defendant Trump by public speech stochastically incites harassment and violence against all manner of public officials, their staffers, their families, and the law-enforcement officers who protect them.

So if the Court were to treat with Defendant Trump on the merits, then the Court would sully its own hands too.

## Conclusion

Defendant Trump knocks on equity's door with unclean hands.

Equity's door should have remained firmly shut against him.[7]

The Court should dissolve the pending administrative stay,

decline to stay the Order any further, and dismiss this appeal.

Respectfully submitted,

*s/ Jeremy Bates*

Jeremy Bates
21 West Street Apt. 21J
New York, New York 10006
917-626-2473
jeremybates3@gmail.com
*Amicus Curiae pro Se*

Dated:  New York, New York
        November 19, 2023

---

[7] "Chancellors in early equity courts issued injunctions as remedies in criminal cases as well as civil cases."  Cortney E. Lollar, *Invoking Criminal Equity's Roots*, 107 Virginia L. Rev. 495, 504 (2021) (citing David W. Raack, *A History of Injunctions in England Before 1700*, 61 Ind. L.J. 539, 560 n.131 (1986), and Edwin S. Mack, *The Revival of Criminal Equity*, 16 Harv. L. Rev. 389, 392 (1903)).

## Certificate of Compliance

This brief complies with the word limits of FRAP 29(a)(5) and FRAP 32(a)(7)(B)(i) because it contains 3,878 words.

This brief complies with the typeface and type-style requirements of FRAP 29(a)(4), FRAP 32(a)(5)(A), and FRAP 32(a)(6) because it was prepared using Microsoft Word software and a proportionally-based typeface—namely, 14-point Century Schoolbook.

<u>*s/ Jeremy Bates*</u>
Jeremy Bates

Dated:  New York, New York
           November 19, 2023

## Certificate of Service

I hereby certify that all counsel of record who have consented to electronic service are being served today with a copy of this document via the Court's ECF system. To my knowledge, all parties and *amici* in this case are represented by counsel consenting to electronic service.

*s/ Jeremy Bates*
Jeremy Bates

Dated:  New York, New York
        November 20, 2023