**ARGUED ON NOV. 20, 2023**

No. 23-3190

In the

# United States Court of Appeals
## for the District of Columbia Circuit

_____

UNITED STATES OF AMERICA

v.

DONALD J. TRUMP,

*Defendant*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
District Court No. 23-cr-257 (Chutkan, J.)

_____

**RESPONSE FOR THE UNITED STATES
IN OPPOSITION TO REHEARING**

_____

J.P. COONEY
Deputy Special Counsel

MICHAEL R. DREEBEN
RAYMOND N. HULSER
Counselors to the Special Counsel

JAMES I. PEARCE
JOHN M. PELLETTIERI
Assistant Special Counsels

JACK SMITH
Special Counsel

MOLLY GASTON
THOMAS P. WINDOM
Senior Assistant Special Counsels

CECIL W. VANDEVENDER
Assistant Special Counsel
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Rm. B-206
Washington, D.C. 20530

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................ii

GLOSSARY OF ABBREVIATIONS............................................ iv

INTRODUCTION .......................................................................... 1

BACKGROUND............................................................................. 2

    I.    The Defendant's Extrajudicial Statements. ................... 2

    II.    The Order Under Review ................................................ 3

ARGUMENT ................................................................................... 8

    I.    Rehearing En Banc Is Unwarranted ........................... 8

        A.    The Court's decision does not conflict with *Brown* or *Ford*................................................................. 9

        B.    The Court's decision does not conflict with First Amendment cases drawn from unrelated contexts. ........... 13

        C.    The Court's assessment of the factual record does not warrant further review. ................................... 15

    II.    Panel Rehearing Is Unwarranted.............................. 16

CONCLUSION.............................................................................. 18

CERTIFICATE OF COMPLIANCE.......................................... 19

i

# TABLE OF AUTHORITIES

## Cases

*Gentile v. State Bar of Nevada*,
  501 U.S. 1030 (1991) ...................................................................... 9

*In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.*,
  751 F.3d 629 (D.C. Cir. 2014) ........................................................ 9

*Landmark Commc'ns, Inc. v. Virginia*,
  435 U.S. 829 (1978) ................................................................. 6, 11

*Pennekamp v. Florida*,
  328 U.S. 331 (1946) ........................................................................ 6

*Sheppard v. Maxwell*,
  384 U.S. 333 (1966) ...................................................................... 14

*Snyder v. Phelps*,
  562 U.S. 443 (2011) ...................................................................... 13

*United States v. Brown*,
  218 F.3d 415 (5th Cir. 2000) ..................................... 9, 10, 11, 12

*United States v. Ford*,
  830 F.2d 596 (6th Cir. 1987) ..................................... 9, 10, 11, 12

*United States v. Koubriti*,
  307 F. Supp. 2d 891 (E.D. Mich. 2004) ...................................... 10

*United States v. Trump*,
  -- F.4th --, 2023 WL 8813752 (D.C. Cir. Dec. 8, 2023)... 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17

**Rules**

Fed. R. App. P. 35(a) ................................................................................. 9

Fed. R. App. P. 40(a)(2) ............................................................................. 16

**GLOSSARY OF ABBREVIATIONS**

JA                         Joint Appendix

Pet.                       Appellant's Petition for Rehearing

SA                         Government's Supplemental Appendix

## INTRODUCTION

The defendant, Donald J. Trump, has "repeatedly attacked those involved in this case through threatening public statements, as well as messaging daggered at likely witnesses and their testimony." *United States v. Trump*, -- F.4th --, 2023 WL 8813752, at *13 (D.C. Cir. Dec. 8, 2023). Recognizing that such attacks threaten the fairness and integrity of these proceedings, the district court issued an Order "restraining the parties and their counsel from making public statements that 'target' the parties, counsel and their staffs, court personnel, and 'any reasonably foreseeable witness or the substance of their testimony.'" *Id.* at *1 (quoting Order at 3). This Court affirmed the decision to issue the Order but narrowed its scope "to maximize the amount of protected speech allowed while still averting the substantive evil of unfair administration of justice." *Id.* at *20 (quotations omitted). As modified, the Order restricts certain attacks on witnesses and trial participants, while leaving the defendant "free to make statements criticizing the current administration, the Department of Justice, and the Special Counsel, as well as statements that this prosecution is politically motivated or that he is innocent of the charges against him." *Id.* at *29.

The Court's decision adheres to Supreme Court precedent and does not conflict with decisions from its sister circuits. Nor does it overlook any material points of fact or law. The rehearing petition should be denied.

## BACKGROUND

### I.    The Defendant's Extrajudicial Statements.

This case stems from the defendant's efforts to overturn the results of the 2020 presidential election and prevent the lawful transfer of power to his successor.  On August 1, 2023, a grand jury charged the defendant in a four-count indictment, JA.20-64, and the district court has scheduled trial to begin on March 4, 2024, SA.157.

From the outset, the defendant has used social media to make prejudicial comments about the case and its participants.  Three days after the indictment, and one day after his initial appearance, he issued the public threat, "IF YOU GO AFTER ME, I'M COMING AFTER YOU!", *Trump*, 2023 WL 8813752, at *3, and then followed through on that threat with statements attacking the district court; the Special Counsel, his family members, and his staff; and trial witnesses who were expected to offer inculpatory testimony against him, *id.* at *3, *13.  Such attacks follow a pattern stretching back years, in which the defendant has publicly targeted state and federal officials, judges, and poll workers who resisted his efforts to overturn the results of the 2020 election.  *Id.* at *13-*14.  Similar attacks continue to this day in other pending cases involving the defendant.  *Id.*

2

The defendant "recognizes the power of his words and their effect on his audience, agreeing that his supporters 'listen to [him] like no one else." *Id.* at *14. Unsurprisingly, then, his attacks have had "real-time, real-world consequences," exposing "those on the receiving end" to "a torrent of threats and intimidation" and turning their lives "upside down." *Id.* at *13-*15.

## II.   The Order Under Review

The district court found that the defendant's public attacks "pose a significant and immediate risk that (1) witnesses will be intimidated or otherwise unduly influenced by the prospect of being themselves targeted for harassment or threats; and (2) attorneys, public servants, and other court staff will themselves become targets for threats and harassment." JA.230. Because no "alternative means" could adequately address these "grave threats to the integrity of these proceedings," the court prohibited the parties and their counsel from making public statements that "target (1) the Special Counsel prosecuting this case or his staff; (2) defense counsel or their staff; (3) any of this court's staff or other supporting personnel; or (4) any reasonably foreseeable witness or the substance of their testimony." JA.231.

This Court affirmed in part and vacated in part. The Court recognized that the Order "involves the confluence of two paramount constitutional interests: the freedom of speech guaranteed by the First Amendment and the

federal courts' vital Article III duty to ensure the fair and orderly administration of justice in criminal cases." *Trump*, 2023 WL 8813752, at \*1.  Balancing these interests, the Court explained, required consideration of three related questions: "(1) whether the Order is justified by a sufficiently serious risk of prejudice to an ongoing judicial proceeding; (2) whether less restrictive alternatives would adequately address that risk; and (3) whether the Order is narrowly tailored, including whether the Order effectively addresses the potential prejudice." *Id.* at \*10.

    1.  As to the first question, the Court "assume[d] without deciding that the most demanding scrutiny applies to the district court's speech-restricting Order, and that only a significant and imminent threat to the administration of criminal justice will support restricting [the defendant]'s speech." *Id.* at \*11.  Applying that standard, the Court concluded that the defendant's "documented pattern of speech and its demonstrated real-time, real-world consequences pose a significant and imminent threat to the functioning of the criminal trial process in this case in two respects." *Id.* at \*15.  "First, [the defendant]'s messages about known or reasonably foreseeable witnesses that concern their potential participation in the criminal proceeding pose a significant and imminent threat to individuals' willingness to participate fully and candidly in the process, to the content of their testimony and evidence, and to the trial's essential truth-finding

function." *Id.* "Second, certain speech about counsel and staff working on the case poses a significant and imminent risk of impeding the adjudication of this case." *Id.* at *16. The record therefore supplied "a sufficient predicate for the district court to have imposed some limitation on trial participants' speech." *Id.* at *18.

2. The Court next concluded that "[n]o less-speech-restrictive alternative could viably protect against the imminent threat to the participation of witnesses, trial participants, and staff in this criminal matter, or the full, fair, and unobstructed receipt of relevant evidence." *Id.* at *19. The district court "tried a less restrictive approach first," by "caution[ing] the parties and counsel against speech that would prejudice the trial process and s[eeking] their voluntary compliance." *Id.* "That warning was not heeded, necessitating a more direct measure." *Id.* The district court also considered other alternatives, but reasonably found that "none was a viable option to respond to the nature and character of the harm posed in this case." *Id.* at *19-*20.

3. The Court next concluded that "[w]hile the district court had the authority to issue an order restraining trial participants' speech, and no less restrictive alternative would suffice, the Order is not narrowly tailored to maximize the amount of protected speech allowed while still averting the 'substantive evil of unfair administration of justice[.]'" *Id.* at *20 (quoting

*Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 844 (1978)).  The Court therefore modified the Order in two respects.

First, the Court found that the "ban on speech that 'targets' witnesses and trial personnel reaches too far," *id.* at *21, and must instead "focus more directly and narrowly on comments that speak to or are about those persons' potential participation in the investigation or in this criminal proceeding," *id.* at *23.  That modified restriction "allows the [defendant] to continue to speak out about those same persons' books, articles, editorials, interviews, or political campaigns as long as he does so in a manner that does not concern their roles as witnesses or the content of any expected testimony," *id.*, while also reinforcing the bail condition—which the defendant has conceded is permissible—forbidding communication with known witnesses outside the presence of counsel, *id.*  By "requiring a nexus between [the defendant]'s speech and a witness's potential participation in the criminal proceeding," the Court "afford[ed] 'freedom of discussion * * * the widest range' that is 'compatible with the essential requirement of the fair and orderly administration of justice.'"  *Id.* at *24 (quoting *Pennekamp v. Florida*, 328 U.S. 331, 347 (1946)).

Second, the Court found that the portion of the Order restricting attacks on "counsel and staff working on the case . . . require[d] some recalibration to sufficiently accommodate free speech."  *Id.* at *26.  The Court recognized that

6

"[s]ome statements concerning counsel or staff working on this case, or their family members, are highly likely to trigger a barrage of threats, intimidation, or harassment that pose an imminent risk of materially interfering with the work of counsel and court personnel as they labor to fairly and orderly adjudicate this complex criminal proceeding." *Id.*   At the same time, the Court noted that "speech about the criminal justice system is vital" and any order should permit defendants to "comment[], within reasonable grounds, on prosecutors' use of their power." *Id.*  Given the role of the Special Counsel, in particular, as "a high-ranking government official who exercises ultimate control over the conduct of this prosecution," the Court found that "the Order should not have restricted speech about the Special Counsel himself." *Id.* at *27.  "As for other counsel in this case and the court's and counsel's staff," the Court held "that adding a *mens rea* requirement will appropriately balance the court's institutional interests and the free speech values at stake." *Id.*

In sum, the Court "affirm[ed] the Order to the extent it prohibits all parties and their counsel from making or directing others to make public statements about known or reasonably foreseeable witnesses concerning their potential participation in the investigation or in this criminal proceeding." *Id.* at *28.  The Court also affirmed the Order "to the extent it prohibits all parties and their counsel from making or directing others to make public statements about—

(1) counsel in the case other than the Special Counsel, (2) members of the court's staff and counsel's staffs, or (3) the family members of any counsel or staff member—if those statements are made with the intent to materially interfere with, or to cause others to materially interfere with, counsel's or staff's work in this criminal case, or with the knowledge that such interference is highly likely to result." *Id.* The Court "vacate[d] the Order to the extent it covers speech beyond those specified categories," and clarified that it "also leaves open the categories of speech the district court explicitly stated were permissible under its initial ruling." *Id.* at *28-*29. The Court did "not allow such an order lightly," given that the defendant "is a former President and current candidate for the presidency, and there is a strong public interest in what he has to say." *Id.* at *29. But because he "is also an indicted criminal defendant," "the rule of law" requires that he "stand trial in a courtroom under the same procedures that govern all other criminal defendants." *Id.*

## ARGUMENT

The defendant petitions for rehearing en banc and panel rehearing. Neither is warranted.

### I. Rehearing En Banc Is Unwarranted

Rehearing en banc "is not favored and ordinarily will not be ordered unless: (1) en banc consideration is necessary to secure or maintain uniformity

of the court's decisions; or (2) the proceeding involves a question of exceptional importance."  Fed. R. App. P. 35(a); *see In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.*, 751 F.3d 629, 636 (D.C. Cir. 2014).  The petition fails to meet either requirement.

### A.     The Court's decision does not conflict with *Brown* or *Ford*.

The defendant argues that the Court's decision conflicts with the Fifth Circuit's decision in *United States v. Brown*, 218 F.3d 415 (5th Cir. 2000), and the Sixth Circuit's decision in *United States v. Ford*, 830 F.2d 596, 598 (6th Cir. 1987), in two respects.  First, he contends (Pet. 3-6) that the Court's decision creates a circuit split regarding the appropriate legal standard for restricting the extrajudicial speech of criminal defendants.  Second, he contends (Pet. 6-8) that the Court's decision "conflicts with *Brown* and *Ford* . . . in practical outcome." Neither claim has merit or warrants further review.

1.  In *Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991), the Supreme Court held "that the First Amendment allows a court to prohibit the speech of a trial participant when the speech poses a 'substantial likelihood of material prejudice' to an adjudicative proceeding."  *Trump*, 2023 WL 8813752, at *9 (quoting *Gentile*, 501 U.S. at 1075).  Although *Gentile* involved speech by a defense attorney, the Fifth Circuit later held that the same standard applies to speech by a criminal defendant.  *Brown*, 218 F.3d at 427-28.  In doing so, *Brown*

disagreed, *id.* at 427, with the Sixth Circuit's pre-*Gentile* decision in *Ford*, 830 F.2d at 600-02.  It is doubtful, however, that *Ford* remains good law following *Gentile*.  *See United States v. Koubriti*, 307 F. Supp. 2d 891, 898-99 (E.D. Mich. 2004).

On appeal the parties "vigorously contest[ed]," *Trump*, 2023 WL 8813752, at *11, whether the *Gentile* standard should apply only to defense attorneys, as the defendant contended, or also to the speech of a criminal defendant, as the Government maintained.  Rather than resolve this dispute, the Court "assume[d] without deciding" that more demanding scrutiny applies.  *Id.* By declining to decide the issue, the Court avoided creating a conflict with *Brown*.  Because the record supported the issuance of the Order even under a higher standard, rehearing is unwarranted to determine whether the *Gentile* standard might apply—a question that a future panel can address if it arises in an outcome-determinative posture.

Rehearing is likewise unwarranted to address any purported conflict between the Court's standard and *Ford*.  The defendant has insisted that the Court apply the "clear and present danger" standard.  *See Trump*, 2023 WL 8813752, at *11.  But "the Supreme Court has said explicitly that 'clear and present danger' is not a proper 'formula for adjudicating cases.'"  *Id.* at *12 (quoting *Landmark Commc'ns, Inc.*, 435 U.S. at 842).  "Instead, the Supreme

10

Court has instructed that what 'clear and present danger' translates to in practice is that courts must analyze whether any compelling interest justifies an appropriately limited speech restriction." *Id.* As applied here, "clear and present danger" translates to a requirement that "only a significant and imminent threat to the administration of criminal justice will support restricting [the defendant]'s speech." *Id.* at *11.

That standard does not meaningfully conflict with *Ford*, to the extent that *Ford* remains good law. Indeed, *Ford* explained that, to "meet the clear and present danger standard in the context of a restraint on a defendant in a criminal trial," there must be a "serious and imminent threat of a specific nature." *Ford*, 830 F.2d at 600 (quotations omitted). The difference, if any, between the "significant and imminent" test applied by this Court and the "serious and imminent" test applied by *Ford* does not warrant en banc review.

2. Nor is there merit to the defendant's contention that the Court's decision "conflicts with *Brown* and *Ford* . . . in practical outcome." Pet. 6. *Brown* affirmed the issuance of a speech-restricting order as a "reasoned and reasonable decision" that was permissibly designed as a "prophylactic attempt" to avoid prejudice to the upcoming trials. *Brown*, 218 F.3d at 431. And while the district court there "chose to suspend its order for the roughly seven weeks leading up to the general election to facilitate Brown's campaigning," nothing in *Brown*

11

purports to require such a measure—which is unsurprising, given that the temporary suspension backfired. *Trump*, 2023 WL 8813752, at *20. Narrow tailoring is necessarily case- and fact-specific. Because the Order here is much narrower than in *Brown*, *see* 218 F.3d at 419 (prohibiting any discussion "intended to influence public opinion regarding the merits of th[e] case"), and any analogous suspension here would not be "feasibl[e]," and would instead "be the equivalent of no Order at all," *Trump*, 2023 WL 8813752, at *20, the decision here does not conflict with the result in *Brown*.

Nor does it conflict with the result in *Ford*. There, the district court (1) failed to make any findings about whether the fairness and integrity of the proceedings were threatened by the defendant's extrajudicial speech, *Ford*, 830 F.2d at 600; (2) failed to consider any "less burdensome alternatives," *id.*; and (3) imposed a "broad 'no discussion-of-the-case' order," *id.* at 598, that prevented the defendant even "from calling a press conference" to explain his position on "the minimum wage," *id.* at 605 (Nelson, J., concurring). By contrast, the district court here (1) found "that some of [the defendant]'s speech poses a significant and imminent threat to the fair and orderly adjudication of the criminal proceeding against him," *Trump*, 2023 WL 8813752, at *13; (2) found that "[n]o less-speech-restrictive alternative could viably protect" against this threat, *id.* at *19; and (3) imposed an Order that, as modified by this

12

Court, narrowly restricts certain prejudicial speech while leaving the defendant ample room to defend himself and criticize the prosecution while running for office. The two decisions do not conflict.

### B. The Court's decision does not conflict with First Amendment cases drawn from unrelated contexts.

The defendant asserts that the Court's decision conflicts with Supreme Court cases applying the First Amendment, including cases describing the value of political and campaign-related speech generally (Pet. 6-9) and cases discussing the heckler's veto doctrine (Pet. 10-12). But his reliance on these cases elides the fact that this appeal "involves the confluence of *two* paramount constitutional interests: the freedom of speech guaranteed by the First Amendment and the federal courts' vital Article III duty to ensure the fair and orderly administration of justice in criminal cases." *Trump*, 2023 WL 8813752, at \*1 (emphasis added). For while "[f]reedom of speech is a bedrock constitutional right" and "'the essence of self-government,'" *id.* at \*6 (quoting *Snyder v. Phelps*, 562 U.S. 443, 452 (2011)), courts also "have an ongoing obligation to ensure that speech about a criminal case does not 'divert the trial from the very purpose of a court system[,]' which is 'to adjudicate controversies, both criminal and civil, in the calmness and solemnity of the courtroom according to legal procedures,'" *id.* at \*8 (quoting *Sheppard v. Maxwell*, 384 U.S. 333, 350-51 (1966)).

Accordingly, the relevant question is not whether any of the defendant's speech is protected by the First Amendment. This Court (like the district court) repeatedly recognized that much of it is protected. *Id.* at *1, *6-*7, *10-*11, *18, *21, *23, *27. The question is how to balance those First Amendment protections against the countervailing need to protect the criminal-justice process. The defendant, however, continues to "give[] no inch to" the latter concern. *Id.* at *12. He likewise "fails to account for the difference between trial participants and nonparticipants." *Id.* And as the Court recognized, his position is fatally undermined by his concession that the bail condition prohibiting him from contacting known witnesses outside the presence of counsel "is 'completely consistent with' the First Amendment because of his status as an indicted defendant"—even though that bail condition qualifies as a "straightforward prior restraint on his speech" that does not clearly fall within the incitement doctrine or any other First Amendment exception. *Id.* at *10 (quoting Oral Arg. Tr. 31:13-32:1).

The defendant cannot show error by insisting that a similar restriction imposed on a non-trial-participant in an unrelated context would implicate, for example, the heckler's veto doctrine (though, as the Court noted, his invocation of that doctrine also fails on its own terms, *id.* at *17-*18). Instead, he must show that the Court failed to strike the appropriate balance when weighing these

14

paramount interests. But his "refus[al] to argue for any such weighing" of interests at all, *id.* at \*12, precludes such a showing.

### C. The Court's assessment of the factual record does not warrant further review.

The defendant contends (Pet. 12-13) that, in assessing the factual record, the Court failed to demand the requisite "solidity of evidence." As noted, this Court applied the "most demanding scrutiny," *Trump*, 2023 WL 8813752, at \*11, and found that standard met by record evidence showing the defendant's "documented pattern of speech and its demonstrated real-time, real-world consequences," *id.* at \*15.

The defendant has "gone after known and potential witnesses," including his former Vice President and Chief of Staff, and told another potential witness that he "'shouldn't [testify]'" before a grand jury in a matter involving overlapping facts. *Id.* at \*13. He has "lashed out at government officials closely involved in the criminal proceeding" and even spoken publicly about their family members. *Id.* He has "repeatedly attacked both the presiding judge and his law clerk in a New York state-law lawsuit." *Id.* at \*14. And these examples come on the heels of similar attacks on public servants in the wake of the 2020 election. *Id.* These attacks "have real-world consequences" that have turned lives "upside down," *id.* at \*13-\*14, going far beyond mere "heckl[ing]" (Pet. 12, 17).

This Court therefore correctly held that "the record amply supports" the district court's "factual finding that, 'when Defendant has publicly attacked individuals, including on matters related to this case, those individuals are consequently threatened and harassed.'" *Id.* at *14 (quoting Order at 2). That fact-bound holding does not conflict with any decision by the Supreme Court or any other court and does not warrant further review.

## II. Panel Rehearing Is Unwarranted

The defendant separately seeks panel rehearing (Pet. 13-17), on the ground that the Court's decision "overlook[ed] or misapprehend[ed]" material points of fact and law, Fed. R. App. P. 40(a)(2). Panel rehearing is unwarranted.

The defendant asserts that the Court overlooked his contention that when he posted to social media the day after his initial appearance, "IF YOU GO AFTER ME, I'M COMING AFTER YOU!" he was merely referring "to contemporaneous reports that the Koch brothers were funding PACs against him." Pet. 13-14. And he speculates (Pet. 14) that when, the following day, his supporter made a racist death threat to the presiding district judge, she may have been "inspired by" watching the Special Counsel's press conference announcing the indictment. The Court did not err by declining to credit these claims.

The defendant emphasizes that, when he accused the former Vice President of "'go[ing] to the Dark Side' and of 'mak[ing] up stories about' the

events of January 6, 2020," *Trump*, 2023 WL 8813752, at *13, the former Vice President was "a rival candidate for the Republican nomination" who was fundraising off of the dispute, Pet. 14-15. The defendant does not explain which of these facts the Court overlooked, *see Trump*, 2023 WL 8813752, at *21, much less how they were material to its holding.

Finally, the defendant claims that the Court "assume[d]" that he "has no valid interest in speaking about prosecutors other than the Special Counsel" or "about the Special Counsel's 'family members.'" Pet. 15-16. In fact, the Court recognized that defendants "have especially strong interests in commenting, within reasonable bounds, on prosecutors' use of their power," and it "recalibrat[ed]" the district court's order by "adding a *mens rea* requirement" to "appropriately balance the court's institutional interests and the free speech values at stake." *Trump*, 2023 WL 8813752, at *26-*27.[1] The defendant cannot show error, and panel rehearing is unwarranted.

---

[1] The Court noted that if the defendant has "reasonable concerns about the impartiality or actions of court or prosecutorial staff," he is free to raise "those concerns in a motion filed with the court." *Id.* at *18 n.13. That approach would permit any claim of "influence" or "bias," Pet. 15-16, to be subject to adversarial testing, rather than resting on mischaracterization and innuendo.

## CONCLUSION

The Court should deny the petition for rehearing.

Respectfully submitted,

J.P. COONEY
Deputy Special Counsel

MICHAEL R. DREEBEN
RAYMOND N. HULSER
Counselors to the Special Counsel

JAMES I. PEARCE
JOHN M. PELLETTIERI
Assistant Special Counsels

JACK SMITH
Special Counsel

MOLLY GASTON
THOMAS P. WINDOM
Senior Assistant Special Counsels

CECIL W. VANDEVENDER
Assistant Special Counsel
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Rm. B-206
Washington, D.C. 20530

December 31, 2023

## CERTIFICATE OF COMPLIANCE
## WITH TYPEFACE AND LENGTH LIMITATIONS

1.      This brief contains 3,879 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally spaced, 14-point serif typeface using Microsoft Word for Microsoft 365.

/S/ CECIL W. VANDEVENDER
Assistant Special Counsel
U.S. Department of Justice

19